No. 20,017.

HELEN EMA ARFSTEN, ET AL., *v.* CHARLES S. HIGBY, ET AL.
(372 P. [2d] 166)

Decided June 11, 1962.

Mr. PAUL SNYDER, for plaintiffs in error Arfsten, et al.

Messrs. WEST and WEST, for plaintiffs in error Fred W. Noe and Jennie Katheryne Raber.

Messrs. ENOS, BUCHLER and DEISCH, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

As minority stockholders owning 7-5/12 of the 46 shares of outstanding stock of The Greenland Land and Cattle Company, plaintiffs in error sued the majority stockholders, who own 28-9/60 shares, for alleged breaches of fiduciary duties owing to minority stockholders in the administration of corporate affairs. Other stockholders, owning 10-13/30 shares, who refused to join with them as plaintiffs, were made defendants. The corporation was also made a defendant.

Actions of alleged misfeasance in sixteen respects, conceived in conspiracy by the majority stockholders, form the gist of the complaint as supplemented by a bill of particulars. Any of these activities, or any combina-

tion of them, represents serious prejudicial abuse of power exercised by the dominant stockholders.

Jennie Katheryne Raber, alleged owner of a fractional share who was not joined as a plaintiff, filed an answer containing two defenses, the first of which admitted the allegations of the complaint, and the second of which in effect joined in the complaint and set forth alleged wrongful conduct of the majority stockholders resulting in damage to minority stockholders. Treating her second defense as a complaint, the majority stockholders denied that Raber was a stockholder and put in issue other allegations.

Another alleged minority stockholder, William E. Higby, filed his answer in which he admitted a substantial part of the complaint. He also cross-claimed against the majority stockholders, alleging culpable activities by them by which they despoiled and mismanaged the corporation to his injury and damage as well as to the injury and damage of other minority stockholders similarly situated. The majority stockholders, in their answer to the cross-claim of William E. Higby, admitted that the cross-claimant owns 8-41/60 shares of stock and that they (majority stockholders) dominate and control the company. Other allegations of the cross-claim were denied.

Alleging that he owns a fractional share, Fred W. Noe by answer admitted the allegations of the complaint and by cross-claim charged the majority stockholders with mishandling the corporation's affairs to the disadvantage of the other stockholders. His allegation of ownership of stock and other allegations were denied by the majority stockholders.

A number of affirmative defenses were permitted by the trial court to be filed by the majority stockholders and the company in the form of amendments to their answers. They become of no moment at this time because of the disposition we must make of this writ of error. Judgment entered in favor of the majority stock-

holders by virtue of a narrow construction placed upon the Uniform Stock Transfer Act, C.R.S. '53, 31-9-1, et seq., by the trial court.

In its Findings of Fact, Conclusions of Law and Decree (hereinafter designated the "Decree"), the trial court recited that it had heard the issues as made between the plaintiffs, Fred W. Noe and Jennie Katheryne Raber, on the one side and the majority stockholders on the other "to determine the ownership of the shares of stock involved herein and the capacity of the plaintiffs as stockholders to maintain this action under the issues as are now presented ... "

In its Decree the trial court stated the question to be "whether or not the Act provides an exclusive method whereby stock may be transferred or whether the method provided by the Act is merely cumulative and in addition to other methods of transfer used at common law prior to the adoption of the Uniform Stock Transfer Act."

Among the findings in the Decree is one "that the plaintiffs are the equitable owners of at least one-half and probably all of the stock in question." But the question before the trial court "is not one of equitable rights but one of legal as well as equitable rights and ownership."

The Decree concluded as follows:

" * * * It is not disputed that the two stock certificates formerly owned by Kate Noe during her lifetime were not properly endorsed by the person appearing thereon to be the owner thereof and that there was no delivery by the person appearing thereon to be the owner thereof; and also, that there is no separate instrument signed by the person appearing by the certificate to be the owner.

"Since the provisions of the Uniform Stock Transfer Act were not complied with and such a compliance with the provisions of the Act would be necessary before the relief prayed for could be granted, the plaintiffs in this

action should not maintain the action under these circumstances. The Court therefore determines as a matter of law, upon the issues submitted in this hearing, that the plaintiffs failed to establish their right to maintain this action.

"It Is Therefore Ordered, Adjudged and Decreed that the above entitled action be from hence dismissed.

"The dismissal of this cause herein shall be without prejudice to the rights of the plaintiffs, and any of them, to commence such further action in the subject matter of this action for the relief herein as they may be advised," and so forth.

■■■ Is one who holds equitable but not legal title to shares of stock helpless to prevent majority stockholders from despoiling and mismanaging a corporation in such manner as to result in a devaluation of his interest? It was asserted by the majority stockholders, and the trial court apparently was so persuaded, that C.R.S. '53, 31-9-1, furnished an affirmative answer to the question.

The cited section provides:

"*Title* to a certificate and to the shares represented thereby can be *transferred* only:

"(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby." (Emphasis supplied.)

Under prior stock transfer statutes of this state, the holder of an equitable title to stock had an enforceable status. *Carlton v. Camfield,* 64 Colo. 373, 171 Pac. 1140; *Weber v. Bullock,* 19 Colo. 214, 35 Pac. 183. Research

reveals that this court has not considered the effect of the later Uniform Stock Transfer Act on equitable titles in shares of stock.

■ Courts of other states have passed upon the question, and it is our observation in a consideration of the alignment of authorities that the majority favors recognition of equitable titles where rights of third parties are not present. *Young v. New Pedrara Onyx Co.,* 48 Cal. App. 1, 192 Pac. 55; *Equitable Trust Co. v. Gallagher,* 31 Del. Ch. 88, 67 A. (2d) 50; *Johnson v. Johnson,* 300 Mass. 24, 13 N.E. (2d) 788; *Whitney v Nolan,* 296 Mass. 419, 6 N.E. (2d) 386; see *Brachman v. Hyman,* 298 Mich. 344, 299 N.W. 101, 168 A.L.R. 902 "There is nothing in the policy of the Act as to sales, pledges or gifts to exclude former valid methods of transfer or change their formal requisites except for the protection of third parties who may be misled by an outstanding certificate." 12 Fletcher Cyc. Corp. (1957 Rev. Vol. 12), §5482, p. 411.

■ Majority stockholders and corporate officers are not third parties within the protective coverage of the Uniform Stock Transfer Act. *Miller v. Wahyou,* 235 F. (2d) 612. It was pointedly said in the cited case:

"Even assuming that the Uniform Stock Transfer Act applies to dissolved corporations, the fact that Corbari had pledged his shares does not mean that he could not transfer to appellants sufficient interest to enable them to challenge breaches of trust duties by directors. * * * Several courts in states which have enacted the Uniform Stock Transfer Act have said that an assignment of a shareholder's interest without delivery of the certificates operates to vest an equitable title in the assignee. [Citing cases.]

"We think the Nevada courts would follow these cases and hold that appellants had a sufficient property interest to challenge a director's breach of trust in acquiring the stock certificates to which they had been assigned

the pledgee's interest. This is a Uniform Act and construction in other states have weight."

That part of the first sentence of C.R.S. '53, 31-9-1 — "*Title* to a certificate and to the shares represented thereby can be *transferred* only" — must be read in connection with C.R.S. '53, 31-9-21, defining terms. Subsections (h) and (i) thereof are as follows:

" (h) 'Transfer' means transfer of legal title.

" (i) 'Title' means legal title and does not include a merely equitable or beneficial ownership or interest."

■ We construe the sections involved as dealing with legal titles, and conclude that the statute clearly recognizes the existence of equitable or beneficial ownerships or interests in shares of stock. The Act does not purport to do away with such ownerships or interests. Decisions of other courts, already cited, are in harmony with this view. Indeed, a construction against such ownership or interest would cast doubt on the validity of the Act.

■ The trial court was in error in ruling that holders of equitable titles in shares of stock could not protect their interests against the wrongful actions of majority stockholders. Once having found that the plaintiffs were the equitable owners of shares, it was incumbent upon the trial court to determine whether the interests of the corporation or their interests were being subverted by the majority stockholders.

Accordingly, the judgment is reversed with directions to permit the parties to amend and supplement their pleadings in such manner as they are advised in order to have a complete hearing and disposition of the case.

MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.