**CISSELL MANUFACTURING COMPANY, Plaintiff–Appellee,**

**v.**

**Young PARK, a/k/a Young D. Park, a/k/a Jim Park, jointly and severally, d/b/a Young's Equipment & Supplies, Defendant–Appellant.**

**No. 99CA1581.**

Colorado Court of Appeals, Div. IV.

Feb. 15, 2001.

Rehearing Denied April 19, 2001.

Certiorari Denied Nov. 27, 2001.

Holland & Hart, LLP, A. Bruce Jones, Stephen G. Masciocchi, Megan C. Bertron, Denver, CO, for Plaintiff–Appellee.

Hamilton and Faatz, P.C., Dwight A. Hamilton, Jan E. Montgomery, Christopher J.W. Forrest, Denver, CO, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Young Park, d/b/a Young's Equipment & Supplies (Park), appeals from the entry of partial summary judgment against him and the judgment of the trial court entered on a jury verdict in favor of plaintiff, Cissell Manufacturing Company. We affirm.

Park, a distributor for Cissell, bought 12 commercial clothing dryers from Cissell to lease to a laundromat owner. Park received and installed the dryers in April 1993, but never paid Cissell.

Difficulties with the dryers arose within days of installation, and Park alerted Cissell to the existence of these problems. After an unsuccessful attempt to meet with Cissell's representative in May 1993, Park and the laundromat owner sent a letter to Cissell on September 7, 1993, "rejecting and revoking acceptance" of the dryers under §§ 4–2–607 & 4–2–608, C.R.S.2000, of the Colorado Uniform Commercial Code (UCC). Ultimately, the dryers were removed and placed in storage.

Cissell sued Park to collect the purchase price. Park counterclaimed for breach of contract, breaches of express and implied warranties, negligence, negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment, later adding a claim under the Colorado Consumer Protection Act (CCPA). The court granted partial summary judgment in favor of Cissell on its breach of contract claim and on Park's breach of contract counterclaim. Park's two motions for reconsideration—one immediately after the grant of partial summary judgment, and the other immediately preceding trial-were both denied.

At trial on Park's remaining counterclaims, the court granted Cissell's motion for directed verdict on Park's negligence claim. On the other counterclaims, the jury returned verdicts in favor of Cissell on all counts. Park's motion for new trial and for judgment notwithstanding the verdict was denied, and he now appeals.

## I.

Park first argues that the trial court improperly granted Cissell's motion for summary judgment on Cissell's claim for payment and on Park's counterclaim for breach of contract. Park also argues that jury instructions based on the summary judgment ruling were incorrect. We agree. However, based on the jury verdicts on the remaining claims, we conclude that the errors were harmless.

### A.

Our review of an order granting a motion for summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo. 1995). Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cung La v. State Farm Automobile Insurance Co.,* 830 P.2d 1007 (Colo.1992). In reviewing a motion for summary judgment, we must view the allegations in the complaint in the light most favorable to the nonmoving party. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

According to the UCC, once a buyer has accepted goods, he or she cannot reject them and is obligated to pay for them at the contract rate. Section 4–2–607. In its order

granting partial summary judgment, the trial court determined that, because Park's response to Cissell's summary judgment motion did not dispute that the dryers were accepted, under § 4–2–607, Park was obligated to pay for them. While acknowledging Park's argument that he had "rejected" acceptance under § 4–2–608 of the UCC, the court found that "because the dryers had been accepted in April 1993, [Park] did not provide in September a 'formal notice of rejection' pursuant to C.R.S. § 4–2–608. At most, he gave notice of an attempt to revoke acceptance." The court concluded that, although Park was free to "pursue other remedies," because he had accepted and was using the dryers, he was, nonetheless, obligated to pay. Thus, the court determined that no genuine issue of material fact remained regarding Cissell's claim for payment and Park's breach of contract counterclaim.

On appeal, Park argues that the trial court erred in concluding that § 4–2–608 does not allow revocation of goods with latent defects after acceptance of the goods; that a buyer remains obligated to pay the entire price even after a successful revocation of acceptance of the goods under § 4–2–608; and that any purported attempt to revoke was invalid as a matter of law because the required notice was inadequate. We agree with Park.

1.

Initially, to the extent Cissell argues that Park did not raise the issue of revocation of acceptance in the trial court and therefore has waived it, we disagree. Park asserted a counterclaim and defense under § 4–2–608 in his pleadings and in response to Cissell's motion for summary judgment. He also tendered an instruction on the same theory, which was rejected by the court on the ground that it was precluded by the grant of partial summary judgment to Cissell.

2.

Under the UCC, a buyer may either reject or accept delivered goods. Section 4–2–601, C.R.S.2000. As discussed, once a buyer accepts goods, he or she is precluded from rejecting them, § 4–2–607(2), C.R.S.2000, and is obligated to pay at the contract rate for goods accepted. Section 4–2–607(1), C.R.S.2000.

However, even after accepting, the buyer may revoke such acceptance:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>
> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>
> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Section 4–2–608.

Revocation of acceptance is a relatively new concept in the UCC, instituted to resolve the ambiguities of the common law doctrine of rescission. But for the fact that rejection is exercised before acceptance and revocation after, the two have the same legal effect. *See* W. Hawkland, *Uniform Commercial Code Series* § 2–608:1 (Art. 2) (1998).

In its complaint, Cissell asserted an entitlement to payment and interest on the goods delivered. *See* § 4–2–709, C.R.S.2000 (action for the price).

In such an action, the seller is entitled to recovery of the price of "goods accepted." Section 4–2–709(1)(a), C.R.S.2000. However, the UCC limits the definition of "goods accepted" to "only goods as to which there has been no justified revocation of acceptance, for such a revocation means that there has been a default by the seller which bars his rights under this section." Section 4–2–709 comment 5, C.R.S.2000.

Thus, a procedurally effective rejection or revocation "bars" acceptance, *see* J. White & R. Summers, *Uniform Commercial Code* § 7–3 (4th ed. 1995) (White & Summers), and revocation of acceptance, like rejection, allows the buyer to avoid the obligation to pay the price. *See* Hawkland, *supra,* § 2–608:1. To the extent the trial court determined otherwise in its summary judgment rulings, it was incorrect.

We also agree with Park that the trial court incorrectly determined that Park could not pursue a remedy under § 4–2–608 because he had not provided to Cissell a "formal" notice of rejection or revocation.

Contrary to the trial court's determination, there is no "formal notice of revocation" requirement under § 4–2–608, nor does it exist under § 4–2–607 (governing rejection). Indeed, § 4–2–608 does not require that a notice of revocation of acceptance assume any particular format, but rather that the content of the notice be determined by "considerations of good faith, prevention of surprise, and reasonable adjustment." Section 4–2–608 comment 5, C.R.S.2000; *see also Allis–Chalmers Corp. v. Sygitowicz,* 18 Wash.App. 658, 571 P.2d 224 (1977); R. Anderson, *Uniform Commercial Code* § 2–608:191, 194 (3d ed.1997). The notice of revocation, to be sufficient, should fairly apprise the seller that the buyer wants to give back the goods and receive a substitute or money in return. *See* Hawkland, *supra,* § 2–608:5.

Here, Park's September 1993 letter was adequate. The letter described in detail the dryers' alleged defects, attempted to "reject acceptance" of the dryers, demanded that Cissell remove the machines from the premises, and requested that damages be paid to Park and the laundromat owner.

B.

Because the trial court erred in its grant of partial summary judgment on Cissell's claim for payment, we agree with Park that its instruction to the jury that Park had breached the contract by failing to pay was error. Similarly, the trial court erroneously refused to instruct the jury on Park's revocation of acceptance counterclaim. However, we are convinced that, even if the jury had been instructed properly, the verdict against Park would have been the same. Thus, the errors were harmless. *See Dunlap v. Long,* 902 P.2d 446 (Colo.App.1995).

As Cissell argues, to prove a valid revocation of acceptance, a buyer must show, *inter alia,* that the goods were nonconforming. Section 4–2–608(1). In this regard, revocation requires a greater showing than rejection: a buyer may reject goods if the tender fails "in any respect to conform to the contract," § 4–2–601, but, in order to revoke, a buyer must show, among other things, that the nonconformity of the goods substantially impairs their value to the buyer. Section 4–2–608 comment 2, C.R.S.2000; *see also* Hawkland, *supra,* § 2–608:2 (clarifying the policy that "it makes good sense to require more from a buyer who has accepted the goods than from one who has rejected them").

Determination of an item's nonconformity hinges on whether it "substantially impairs its value to [the buyer]." *See* Hawkland, *supra,* § 2–608:2; *see also Keen v. Modern Trailer Sales, Inc.,* 40 Colo.App. 527, 578 P.2d 668 (1978) (although section 4–2–608 appears to create a subjective test in the sense that the requirements of the particular buyer must be examined and deferred to, impairment of the buyer's requirements must be substantial in objective terms). Whether goods are nonconforming requires reference to the terms of the contract and to the law of warranty. *See* § 4–2–106(2), C.R.S.2000 (goods are conforming when they are in accordance with the obligations under the contract); White & Summers, *supra,* § 8–4. In other words, if the goods are as contracted for and as warranted, they cannot be nonconforming.

Here, although Park's revocation of acceptance instruction was not presented to the jury, the jury was instructed on Park's remaining counterclaims for breach of express warranty, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability. Moreover, the evidence pertaining to the latter counterclaims was, as Park concedes,

identical to that which would have supported his claim of revocation of acceptance.

By special verdict, however, the jury found against Park on all three counterclaims. Specifically, the jury found that the dryers' features satisfied all of Cissell's express warranties as set forth in the parties' contract. The jury also found that Park had failed to prove that the dryers were "not suitable for the particular purpose for which they were warranted." *See* § 4–2–315, C.R.S.2000. Similarly, by rejecting Park's counterclaim of breach of implied warranty of merchantability, the jury found that the dryers were "of merchantable quality at the time of sale." *See* § 4–2–314, C.R.S.2000.

Thus, by finding that the goods were "as warranted," "suitable," and "merchantable," the jury necessarily rejected any purported claim of nonconformity. *See* §§ 4–2–106 & § 4–2–608; *see also Gulfwind South, Inc. v. Jones,* 775 So.2d 311 (Fla.Dist.Ct.App.2000) ("before the trial court could find a valid revocation of acceptance, it had to find that there was, in fact, a contractual or warranty provision setting a standard of conformity, and the facts demonstrated nonconformity with that standard").

Moreover, because of the manner in which the jury was instructed, the verdict on the warranty claims could not have been tainted, as Park argues, by the court's errors.

Although the trial court erroneously instructed the jury that, by failing to pay, Park breached the contract, the jury could only consider that breach as an affirmative defense to Park's three breach of warranty claims. Specifically, for each of Park's breach of warranty claims, the structure of the verdict forms required the jury first to answer the question whether Park had proven his breach of warranty claim. Only if it had answered "yes" was it to answer the second question, whether Cissell had proved any of its affirmative defenses.

Thus, because the jury answered "no" to the first question on each of the three breach of warranty claims, we conclude that it did not consider Cissell's affirmative defense of breach of contract. *See Armentrout v. FMC Corp.,* 842 P.2d 175 (Colo.1992) (we must presume that jury follows court's instructions).

II.

The trial court directed a verdict against Park on his counterclaim for negligence on the grounds that it was barred by the "economic loss rule." Park contends that this was error. We disagree.

The "economic loss rule" prohibits a negligence claim when the breach of duty is contractual and the harm incurred is the "result of failure of the purpose of contract." *Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256 (Colo.2000); *Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267 (Colo.2000) (expressly adopting the economic loss rule in Colorado); *Jardel Enterprises, Inc. v. Triconsultants, Inc.,* 770 P.2d 1301 (Colo.App. 1988). Under this rule, a party suffering purely economic loss from the breach of an express or implied contractual duty is barred from asserting a tort claim for such a breach, absent an independent duty of care under tort law. *Town of Alma v. Azco Construction, Inc., supra.*

Here, Park sought only economic damages. He claims, nevertheless, that Cissell's act of providing defective dryers was negligent and breached an independent duty of care.

However, the contract between the parties required that Cissell provide conforming goods to Park; its alleged failure to do so was the basis for Park's claim for breach of express warranty. Because Park's negligence claim was based on the existence of a duty that arose from the terms of the contract, his negligence and contract claims were equivalent.

Thus, since no duties independent of contractual duties were alleged to have been breached, the trial court correctly refused to submit Park's negligence claim to the jury.

We do not discuss Park's claim that the trial court similarly erred by directing a verdict on his claim that Cissell misrepresented the quality of the dryers. The record indicates that Park's claim for negligent misrep-

resentation was, in fact, submitted to the jury.

III.

Park further argues that the court erred in denying his motion for judgment notwithstanding the verdict and motion for a new trial. We disagree.

If, when viewing the evidence in the light most favorable to the party against whom the motion is directed, no reasonable person could reach the same result reached by the jury, the moving party is entitled to a judgment notwithstanding the verdict. C.R.C.P. 59(e); *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544 (Colo.1988).

Unlike a judgment notwithstanding the verdict, which is a question of law for the courts, discretion to grant a new trial rests with the trial court, which may grant a new trial even though some evidence presented at trial supports the jury's verdict. *Roberts v. Consolidated Freightways Corp.*, 735 P.2d 894 (Colo.App.1986). However, a motion for a new trial will not be granted for error that did not prejudice or harm the party seeking a new trial, or where the trial resulted in substantial justice. C.R.C.P. 59 & 61; *Francis v. O'Neal*, 127 Colo. 432, 257 P.2d 973 (1953); *Tincombe v. Colorado Construction & Supply Corp.*, 681 P.2d 533 (Colo.App.1984).

Here, Park argues that no reasonable person would have found for Cissell based on the evidence presented at trial. We disagree. Although the evidence was conflicting, we must view it in the light most favorable to Cissell. And, from our review of the record, Cissell presented ample evidence to rebut Park's counterclaims. *See Amber Properties, Ltd. v. Howard Electrical & Mechanical Co.*, 775 P.2d 43 (Colo.App.1988).

IV.

Finally, Park alleges that the court allowed Cissell's counsel to make statements and offers of improper evidence that were so prejudicial as to warrant a new trial. We disagree.

If counsel's remarks, either in opening statements or at trial, are not shown to result in prejudice, the trial court does not abuse its discretion in denying a new trial. *Pulliam v. Dreiling*, 839 P.2d 521 (Colo.App. 1992). Moreover, if a party does not object in a timely manner to allegedly improper statements made by counsel to the jury, that party cannot raise the issue on appeal. *Anderson v. Dunton Management Co.*, 865 P.2d 887 (Colo.App.1993).

On appeal, Park objects to counsel's opening statement references to Park's pretrial request for millions of dollars in damages, his history of business failures, his misrepresentation of his experience, his improper installation of the dryers, his CCPA claim, and his suspended driver's license. However, Park did not raise objections to the first four statements at trial, and thus is barred from raising them for the first time here. *See Anderson v. Dunton Management Co., supra.*

As to comments concerning Park's CCPA claim and his suspended driver's license, the trial court promptly curtailed mention of either. The CCPA was referred to only in passing before the court disallowed further mention of it. Similarly, the court ended a line of inquiry concerning Park's suspended driver's license, to which Park did not respond, and instructed the jury to disregard the question.

If the court sustains objections to a line of questioning, the witness does not answer, and the court instructs the jury that statements of counsel are not evidence, the court may properly deny a request for a new trial. *See Ortivez v. Davis*, 902 P.2d 905 (Colo.App.1995). Accordingly, no new trial was required here.

The judgment is affirmed.

RULAND and TAUBMAN, JJ., concur.