MORTGAGE INVESTMENTS COR-
PORATION, a Colorado corpo-
ration, Plaintiff–Appellee,

v.

BATTLE MOUNTAIN CORPORATION;
Anglo American Consolidated Corpora-
tion; Anglo America Consolidated Cor-
poration; Conejos Advisors Company;
Sangre Consultants, Inc.; Apishapa
Management, Inc.; Piney Lumber Com-
pany; ·Pine Martin Mining Company;
and Battle Mountain Limited Liability
Company, Defendants–Appellants.

No. 99CA2111.

Colorado Court of Appeals.

July 5, 2001.

As Modified on Denial of Rehearing
January 17, 2002.

Certiorari Granted Oct. 21, 2002. *

* Justice KOURLIS does not participate.

Netzorg & McKeever, P.C., Gordon W. Netzorg, Cortez Macaulay Bernhardt & Schuetze, LLC, Susan Bernhardt, Denver, CO, for Plaintiff–Appellee.

Appel & Lucas, P.C., Garry R. Appel, Denver, CO, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

In this suit to foreclose on a deed of trust, defendants, Battle Mountain Corporation (BMC); Anglo American Consolidated Corporation; Anglo America Consolidated Corporation; Conejos Advisors Company; Sangre Consultants, Inc.; Apishapa Management, Inc.; Piney Lumber Company; Pine Martin Mining Company; and Battle Mountain Limited Liability Company (collectively Battle Mountain), appeal the summary judgment and orders entered in favor of plaintiff, Mortgage Investments Corporation (Mortgage Investments). We affirm in part, reverse in part, and remand for further proceedings.

In 1983, BMC signed a promissory note secured by a deed of trust on real property known as the Gilman property, located in Eagle County, Colorado. The Federal Deposit Insurance Corporation (FDIC) eventually became the holder of the note and in 1990 sued on the note and obtained a judgment in California. In 1991, the California judgment was domesticated in Eagle County. In 1993, the FDIC assigned the judgment and deed of trust to Mortgage Investments.

In 1994, Thomas Nevis, the sole shareholder of BMC, allegedly sold the "corpus" of BMC to Jeff Tucker for $1000, but Tucker did not obtain the BMC stock certificates. Because BMC was not in good standing with the secretary of state and the corporate name was no longer available, Tucker changed BMC's name to Anglo American Consolidated Corporation (AACC).

Later that year, Turkey Creek, L.L.C. (Turkey Creek) filed a complaint in case 94CV152 seeking to foreclose on the deed of trust and seeking to quiet title to some of the Gilman property.

In 1995, Nevis and BMC sold the Gilman property to Glenn Miller and conveyed it to him by quitclaim deed. That same year, Mortgage Investments recorded its interest as an assignee in the judgment and deed of trust regarding the Gilman property.

In 1996, AACC granted 405 deeds of trust on the Gilman property to three of the Battle Mountain defendants and also conveyed parts of the Gilman property to the other three defendants. The trial court found that AACC's grant of the 405 deeds of trust was void.

In 1998, Turkey Creek commenced a second action, case 98CV372, against AACC for damages based upon the 405 fraudulent deeds of trust involved in case 94CV152. Mortgage Investments then commenced this foreclosure action, case 98CV374, against Battle Mountain based on the 1983 BMC deed of trust. Mortgage Investments served the summons and complaint on Tucker as "agent, manager and/or officer" of BMC.

In 1999, over Battle Mountain's objections, the trial court granted the joint motion of Turkey Creek and Mortgage Investments to consolidate, *inter alia,* cases 98CV372 and 98CV374 with case 94CV152.

Thereafter, the trial court entered summary judgment in favor of Mortgage Investments and struck BMC's pleadings in case 98CV374, concluding that because Tucker had never acquired ownership of BMC, he had no authority to act on BMC's behalf. The court also awarded summary judgment in favor of Mortgage Investments with regard to its claims against the other Battle Mountain defendants as they were created through conveyances from BMC.

Battle Mountain now appeals the summary judgment in case 98CV374 and the orders consolidating the cases, striking its pleadings, and denying post-trial relief.

## I. Appellate Jurisdiction

 Initially, we consider and reject Mortgage Investments' contention that Battle Mountain's appeal is not properly before this court because the trial court did not issue a final order. After the notice of appeal was filed, the trial court issued an order certifying the summary judgment as final pursuant to C.R.C.P. 54(b). Thus, we may consider Battle Mountain's appeal.

## II. Consolidation

Battle Mountain first contends that the trial court abused its discretion by consolidating case 98CV374 with case 94CV152. Specifically, Battle Mountain argues that by consolidating the cases, the senior judge pre-

siding over case 94CV152 exceeded his constitutional authority and abused the court's discretion because case 94CV152 was no longer "pending" and there were no common questions of law or fact, as required by C.R.C.P. 42(a). We disagree.

■ A court may consolidate pending actions involving common questions of law or fact. C.R.C.P. 42(a). The decision to grant or deny a motion to consolidate lies within the sound discretion of the trial court, and its ruling will not be disturbed on review absent a clear abuse of that discretion. *Fed. Deposit Ins. Corp. v. Bowen*, 865 P.2d 868 (Colo. App.1993).

In October 1998, Turkey Creek and Mortgage Investments filed a joint motion to consolidate case 98CV374 and case 98CV372. In February 1999, they filed a motion to consolidate, *inter alia*, cases 98CV372 and 98CV374 with case 94CV152. Over Battle Mountain's opposition, the trial court granted the second motion.

### A. Senior Judge's Authority

Battle Mountain first asserts that because the senior judge was appointed originally to perform temporary judicial duties only in case 94CV152, he exceeded his constitutional authority in consolidating the other cases with that case. We are not persuaded.

The Colorado Constitution states, in pertinent part, "Whenever the chief justice deems assignment of a judge necessary to the prompt disposition of judicial business, he may ... (b) assign any ... retired ... district ... judge who consents, temporarily to perform judicial duties in any court." Colo. Const. art. VI, § 5(3). Accordingly, retired judges from the judicial division, who have entered into an agreement with the chief justice of the supreme court, are permitted to "return to temporary judicial duties" as senior judges. Section 24–51–1105(1)(a), C.R.S.2000. Thus, retired judges may preside as senior judges over district court cases.

Here, in 1996, the judge presiding over case 94CV152 retired, but subsequently was assigned to continue hearing that case as a senior judge. The order stated, "After review of the above-entitled matter, counsel's request, and consultation with the Chief Justice, it is hereby Ordered that the Honorable William L. Jones, Senior Judge, be appointed to hear this matter [case 94CV152] to its conclusion." Three years later, that senior judge granted the motion to consolidate discussed above.

■ We conclude that the senior judge did not exceed his constitutional authority by granting the motion to consolidate. Neither the Colorado Constitution nor § 24–51–1105(1)(a) prohibits a senior judge from consolidating cases when it is appropriate to do so under C.R.C.P. 42(a). Without such an express prohibition, there is no reason to preclude a senior judge from performing the tasks required of a district court judge. *Cf. Merchants Mortgage & Trust Corp. v. Jenkins*, 659 P.2d 690 (Colo.1983)(Colorado Constitution deprives a judge of jurisdiction to act on district court cases after appointment to court of appeals); *People v. Torkelson*, 22 P.3d 560 (Colo.App.2000)(court acted without jurisdiction when county court judge who accepted the verdict was not appointed pursuant to the constitution and chief justice directive).

In addition, contrary to Battle Mountain's contention, there is no indication that the parties engaged in judge-shopping. In selecting the court in which to file their motion for consolidation, Turkey Creek and Mortgage Investments merely complied with C.R.C.P. 121 § 1–8 and filed the motion in the court hearing the earliest filed case, namely case 94CV152.

Accordingly, we conclude that the trial court judge did not exceed his constitutional authority by consolidating the cases.

### B. C.R.C.P. 42 Requirements

In addition, Battle Mountain contends that the trial court abused its discretion in consolidating the cases because the requirements for consolidation under C.R.C.P 42 were not met. Specifically, Battle Mountain asserts that case 94CV152 was no longer pending before the trial court, that it did not have the same parties as case 98CV374, and that the

two cases did not involve the same property. Again, we are not persuaded.

■ Battle Mountain first argues that case 94CV152 was no longer pending because it had been affirmed on appeal in *Turkey Creek, LLC v. Rosania,* 953 P.2d 1306 (Colo. App.1998). However, that appeal was from a partial summary judgment and did not affect issues that remained pending before the trial court. Thus, case 94CV152 was still pending for the purpose of C.R.C.P. 42(a).

■ Next, Battle Mountain asserts that the two cases did not involve the same property. However, the record does not support this assertion. Rather, the record demonstrates that the property listed in an attachment to Mortgage Investments' complaint in case 98CV374 includes some of the same property listed in documents relating to case 94CV152. Thus, because some of the same property was involved in both cases, the trial court did not abuse its discretion in consolidating the cases.

The fundamental inquiry in determining whether consolidation is appropriate is whether the cases share common questions of law or fact. C.R.C.P. 42(a).

Here, the common legal question linking these cases was the ownership of the Gilman property. Several parties presented competing claims concerning the validity of their deeds of trust on this property. The need for joint resolution of these claims made consolidation appropriate here.

In addition to the common question of law, the cases involved similar witnesses, similar documentary evidence, and similar parties. Many of the parties were involved in at least two of the various cases consolidated with case 94CV152. *See Askew v. Gerace,* 851 P.2d 199 (Colo.App.1992)(court did not abuse its discretion in consolidating cases even where parties in the two cases were not identical). Thus, the cases had common questions of fact.

Accordingly, because common questions of law and fact were present, we find no abuse of discretion.

### III. Summary Judgment and Motion to Strike the Pleadings

Next, Battle Mountain contends that the trial court erred in granting Mortgage Investments' motions for summary judgment and to strike Battle Mountain's pleadings. We agree.

■ Under C.R.C.P. 56(c), summary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Cissell Mfg. Co. v. Park,* —— P.3d ——, 2001 WL 125896 (Colo.App. No. 99CA1581, Feb. 15, 2001). Appellate review of a summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

■ In determining whether summary judgment was appropriate, a reviewing court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant. *Colorado Civil Rights Comm'n v. North Washington Fire Protection Dist.,* 772 P.2d 70, 80 (Colo.1989).

Here, Battle Mountain moved for partial summary judgment, arguing that Mortgage Investments' complaint was time-barred by the six-year statute of limitations for enforcement of rights set forth in an instrument evidencing a debt pursuant to § 13–80–103.5, C.R.S.2000. Mortgage Investments then filed a cross-motion for summary judgment. Seeking to strike Battle Mountain's pleadings, it argued that because Tucker never received the BMC stock certificates from Nevis as required by § 4–8–104(a), C.R.S. 2000, he never became the sole shareholder of BMC, never had the authority to act on BMC's behalf, and accordingly had no standing to challenge this foreclosure action. The trial court concluded that Mortgage Investments' complaint was not time-barred and granted its motion, finding that Tucker had never acquired ownership of BMC, and accordingly that Battle Mountain's pleadings were therefore filed without proper authority.

## A. Standing

Battle Mountain argues that the trial court improperly applied the doctrine of standing when it found that Tucker could not act on behalf of BMC and that the interests held by the other Battle Mountain defendants were invalid. We agree.

■ Essentially, the trial court found, and Mortgage Investments now argues, that because Tucker had no authority to act on behalf of BMC, and therefore had no authority to create the entities that are the other Battle Mountain defendants, Battle Mountain had no standing to litigate against Mortgage Investments. However, this argument is misplaced.

■ Traditional standing rules do not apply when a defendant's standing is challenged. Once the plaintiff has established standing and the defendants have been brought into court by the plaintiff, the defendants' only role is to defend against the suit. *In re Estate of DeWitt*, 32 P.3d 550 (Colo. App.2000). Thus, the rules for determining whether a plaintiff has standing are inapplicable to the defendants here. See *Simpson v. Highland Irrigation Co.*, 893 P.2d 122 (Colo. 1995).

Here, Mortgage Investments sued Battle Mountain; therefore, Battle Mountain has "standing" to defend itself in these proceedings.

## B. Ultra Vires Corporate Actions

Battle Mountain further argues that the trial court erred in granting summary judgment because Mortgage Investments cannot challenge the validity of its corporate actions. Again, we agree.

Section 7–103–104, C.R.S.2000, addresses *ultra vires* corporate actions and states in relevant part:

(1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked the power to act.

(2) A corporation's power to act may be challenged:

(a) In a proceeding by a shareholder against the corporation to enjoin the act;

(b) In a proceeding by or in the right of the corporation . . . ; or

(c) In a proceeding by the attorney general under section 7–114–301.

■ Here, Mortgage Investments argues that because Tucker did not receive the BMC securities as required by § 4–8–104(a)(1), C.R.S.2000, he did not have the authority to act on behalf of BMC. Thus, he did not have the authority to create the other Battle Mountain entities or transfer any of BMC's interests to them. However, we do not address that argument on the merits. Mortgage Investments is barred from making such a claim of *ultra vires* action against BMC and the other Battle Mountain defendants by the provisions of § 7–103–104(1), because the claim does not fit within any of the exceptions in § 7–103–104(2). Therefore, Mortgage Investments is prohibited from challenging Battle Mountain's authority to act.

Furthermore, we reject Mortgage Investments' argument that this statute does not apply because the issue is not an *ultra vires* action, but rather, whether Tucker was the proper person to cause BMC and Battle Mountain to take any action. However Mortgage Investments chooses to frame this issue, it is still challenging the authority of BMC and Battle Mountain to take certain actions. Thus, it is asserting an *ultra vires* challenge, and as stated above, it is precluded from doing so by § 7–103–104(1).

Consequently, we conclude that the trial court erred in granting summary judgment in favor of Mortgage Investments and in striking Battle Mountain's pleadings.

## C. Waiver

■ Finally, we disagree with Mortgage Investments' contention that Battle Mountain's defenses to foreclosure were waived when the trustee in bankruptcy for the Miller estate executed a waiver and release of all defenses and disclaimed all interest in the property in case 94CV152. These actions were taken on behalf of the Miller estate, and

not Battle Mountain. Therefore, such waiver was not binding on Battle Mountain.

### IV. Time Limitations

Battle Mountain argues that the trial court erred in granting summary judgment because § 13–80–103.5, C.R.S.2000, is the applicable statute of limitations and precludes Mortgage Investments' claim. In the alternative, Battle Mountain argues that Mortgage Investments' claim is barred by § 13–52–102(1), C.R.S.2000, which provides that judgment liens shall continue for six years from the entry of judgment unless the judgment is previously satisfied. In response, Mortgage Investments argues that § 13–80–103.5 does not apply because it does not address foreclosure proceedings, that § 13–52–102(1) does not apply either because it does not purport to apply to deeds of trust, and that § 38–39–205, C.R.S.2000, provides a fifteen-year time limitation under which its action was timely filed. We agree with Battle Mountain.

■■■ Initially, we reject Battle Mountain's contention that Mortgage Investments has no "standing" to sue because it did not file its claim within the six-year statute of limitations set forth in § 13–80–103.5. For a party to have standing to sue, he or she must have "suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). Here, Mortgage Investments is the assignee of the judgment based on the deed of trust. Because it has been injured by Battle Mountain's failure to satisfy the judgment and deed of trust on the Gilman property, it has standing to sue.

Assuming without deciding that a creditor may simultaneously sue on both a judgment lien and a lien based on a deed of trust, we conclude that Mortgage Investments' claim was not timely filed under either of the applicable statutes of limitations. *See Gale v. Rice,* 636 P.2d 1280 (Colo.App.1981).

### A. § 13–80–103.5

Battle Mountain argues that the trial court erred in granting summary judgment because Mortgage Investments' claim was filed outside the six-year statute of limitations of § 13–80–103.5. We agree.

Section 13–18–105.3 states, in part, that "all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt" must be filed within six years after the cause of action accrues.

Here, Mortgage Investments sued to foreclose on the deed of trust pursuant to C.R.C.P. 105.

Mortgage Investments argues that § 13–80–103.5 does not purport to apply to foreclosure proceedings. However, Mortgage Investments has repeatedly asserted that it is foreclosing based upon the deed of trust assigned to it by the FDIC. The underlying claim based upon a deed of trust is within the scope of § 13–80–103.5 because the deed of trust secured the underlying debt. Thus, we conclude that § 13–80–103.5 applies here.

■ Under § 13–80–103.5, the six-year statute of limitations begins to run as soon as the cause of action accrues. There is no information in the record about the date of BMC's first default on the note, which would be the date that the cause of action accrued. However, even using the date the California judgment was entered in 1990 as the date of accrual, Mortgage Investments did not file its claim within the six-year limitations period, which expired no later than 1996. Therefore, under § 13–80–103.5, Mortgage Investments claim was not timely.

### B. § 13–52–102(1)

Although Mortgage Investments' only sought to foreclose on the deed of trust, insofar as it claims to foreclose on the judgment lien, we address Battle Mountain's assertion that Mortgage Investments' claim was also time-barred by the six-year limit on judgment liens under § 13–52–102(1). We agree with Battle Mountain.

Section 13–52–102(1) provides in pertinent part:

All goods and chattels, lands, tenements, and real estate of every person against whom any judgment is obtained in any court of record, either at law or in equity,

for any debt, damages, costs or other sum of money are liable to be sold on execution to be issued upon such judgment.... [T]he judgment shall become a lien upon all the real property of such judgment debtor....

Section 13–52–102(1) further provides that such a lien "shall continue for six years from the entry of judgment."

Here, the FDIC assigned the judgment lien on the Gilman property to Mortgage Investments. Mortgage Investments does not dispute that its assignor obtained a judgment on June 4, 1990 in California.

■■■ Under § 13–52–102(1), when a judgment has been obtained in a foreign jurisdiction and subsequently filed in Colorado, the six-year period begins to run on the date that the judgment was entered in the foreign jurisdiction. *Baum v. Baum*, 820 P.2d 1122 (Colo.App.1991). The judgment in California was entered in 1990; therefore, the six-year period expired in 1996. Because Mortgage Investments did not file its claim until 1998, it no longer had a judgment lien at that time.

[18] We note that the running of the statute of limitations or the six-year period for judgment liens does not extinguish BMC's debt; rather, the remedies of foreclosing based on the deed of trust or judgment lien are barred by these time limits. Mortgage Investments may seek to enforce its judgment by other means. *See Estate of Ramsey v. State Dep't of Revenue*, 42 Colo. App. 163, 167–68, 591 P.2d 591, 595 (1979).

### C. § 38–39–205

We also reject Mortgage Investments' contention that a fifteen-year time limit in § 38–39–205 applies, rather than the six-year statutes of limitations in §§ 13–80–103.5 or the six-year period under 13–52–102(1).

Section 38–39–205 states:

*Action to be brought within fifteen years.* No action shall be commenced to foreclose the lien of any mortgage or deed of trust, unless such action is commenced prior to the date on which such mortgage or deed of trust ceases to be a lien pursuant to sections 38–39–201 and 38–39–202.

Section 38–39–201(1), C.R.S.2000, provides in relevant part, "any lien upon property created by a mortgage or deed of trust shall cease to be a lien fifteen years after the date on which the final payment or performance of the obligation secured thereby is due."

Mortgage Investments argues that because the date of the final payment due cannot be determined, the fifteen-year period ran from the date the deed of trust was created, September 1, 1983, to September 1, 1998. According to Mortgage Investments, because case 98CV374 was filed on July 13, 1998, it was timely. We disagree.

■■■ Section 38–39–205 is not a statute of limitations; rather, it provides a maximum time limit within which a claim upon a deed of trust may be brought. This issue was addressed in *Martinez v. Continental Enterprises*, 730 P.2d 308, 313–14 (Colo.1986), when the supreme court examined the predecessor to § 38–39–205:

Under this statutory scheme, a lien is extinguished in six years if recovery on the underlying note is barred by the six-year statute of limitation. However, if the six-year statute is for some reason tolled, such as where the plaintiff lacks capacity to sue or where the defendant is absent from the state, the ultimate marketability of title is assured by placing an outer limit of fifteen years on the time period during which the lien is deemed viable. Where, as here, any action to recover payment on a promissory note is barred by the six-year statute of limitation, foreclosure on the deed of trust securing the note is also barred. (citations omitted)

Thus, § 38–39–205 does not establish a fifteen-year time limitation for filing a foreclosure claim on a deed of trust, but rather establishes an ultimate limit on how long the six-year statute of limitations may be tolled. Because there was no basis for tolling the statute of limitations here, § 38–39–205 does not apply.

Given this analysis, we do not address Battle Mountain's additional contention that § 38–39–207, C.R.S.2000 applies to bar Mortgage Investments' foreclosure of its deed of

trust when no action was taken to foreclose within six years after the note was reduced to judgment.

Therefore, we reverse the summary judgment in favor of Mortgage Investments. We further conclude that on remand, the court must enter judgment for Battle Mountain because Mortgage Investments failed to file its lawsuit in a timely manner.

In light of this conclusion, we need not consider Battle Mountain's remaining contentions.

The judgment is reversed, the order of consolidation is affirmed, and the case is remanded for further proceedings consistent with this opinion.

Judge NIETO and Judge STERNBERG ** concur.