**MORTGAGE INVESTMENTS CORPORATION, a Colorado corporation, n/k/a New Mortgage Investments Corporation, a Colorado corporation, Plaintiff–Appellee,**

**v.**

**BATTLE MOUNTAIN CORPORATION; Anglo American Consolidated Corporation; Anglo America Consolidated Corporation; Conejos Advisors Company; Sangre Consultants, Inc.; Apishapa Management, Inc.; Piney Lumber Company; Pine Martin Mining Company; and Battle Mountain Limited Liability Company, Defendants–Appellants.**

No. 99CA2111.

Colorado Court of Appeals, Div. V.

Nov. 20, 2003.

As Modified on Denial of Rehearing March 11, 2004.

Netzorg McKeever Koclanes & Bernhardt, LLC, Gordon W. Netzorg, J. Nicholas McKeever, Jr., Susan Bernhardt, Denver, Colorado, for Plaintiff–Appellee.

Appel & Lucas, P.C., Garry R. Appel, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

In this suit to foreclose on a deed of trust, we consider, after remand from the supreme court, the two issues we did not previously address. Defendants, Battle Mountain Corporation (BMC); Anglo American Consolidated Corporation; Anglo America Consolidated Corporation; Conejos Advisors Company; Sangre Consultants, Inc.; Apishapa Management, Inc.; Piney

Lumber Company; Pine Martin Mining Company; and Battle Mountain Limited Liability Company (collectively Battle Mountain), appeal the summary judgment and orders entered in favor of plaintiff, Mortgage Investments Corporation, now known as New Mortgage Investments Corporation. We affirm.

In 1983, BMC signed a promissory note secured by a deed of trust on real property known as the Gilman property, located in Eagle County, Colorado. The Federal Deposit Insurance Corporation (FDIC) eventually became the holder of the note, sued on it, and obtained a judgment in California. In 1991, the California judgment was domesticated in Eagle County. In 1993, the FDIC assigned the judgment and deed of trust to Mortgage Investments.

In 1994, Thomas Nevis, the sole shareholder of BMC, allegedly sold the "corpus" of BMC to Jeff Tucker for $1000, but Tucker did not obtain the BMC stock certificates. Because BMC was not in good standing with the secretary of state and the corporate name was no longer available, Tucker changed BMC's name to Anglo American Consolidated Corporation (AACC). Later that year, Turkey Creek, L.L.C. filed a complaint in case 94CV152 seeking to foreclose on the deed of trust and to quiet title to some of the Gilman property.

In 1995, Nevis and BMC sold the Gilman property to Glenn Miller and conveyed it to him by quitclaim deed. That same year, Mortgage Investments recorded its interest as an assignee in the judgment and deed of trust regarding the Gilman property.

In 1996, AACC granted 405 deeds of trust on the Gilman property to three of the Battle Mountain defendants and also conveyed parts of the Gilman property to the other three defendants. The trial court found that AACC's grant of the 405 deeds of trust was void.

In 1998, Turkey Creek commenced a second action, case 98CV372, against AACC for damages based upon the 405 fraudulent deeds of trust involved in case 94CV152. Mortgage Investments then commenced this foreclosure action, case 98CV374, against Battle Mountain based on the 1983 BMC deed of trust. Mortgage Investments served the summons and complaint on Tucker as "agent, manager and/or officer" of BMC.

In 1999, the trial court granted the joint motion of Turkey Creek and Mortgage Investments to consolidate, inter alia, cases 98CV372 and 98CV374 with case 94CV152.

Thereafter, the trial court entered summary judgment in favor of Mortgage Investments and struck BMC's pleadings in case 98CV374, concluding that because Tucker had never acquired ownership of BMC, he had no authority to act on BMC's behalf. The court also awarded summary judgment in favor of Mortgage Investments on its claims against the other Battle Mountain defendants that were created through conveyances from BMC.

We reversed, holding that Mortgage Investments could not challenge Battle Mountain's standing to raise a statute of limitations defense and that Mortgage Investments' foreclosure action was barred by the six-year statute of limitations under §§ 13–52–102 and 13–80–103.5, C.R.S.2003. *Mortgage Invs. Corp. v. Battle Mountain Corp.,* 56 P.3d 1104 (Colo.App.2001).

The supreme court reversed our decision in part, holding that Mortgage Investments' foreclosure action is governed by the fifteen-year limitations period contained in § 38–39–205, C.R.S.2003, and thus reinstated that action. However, the supreme court agreed with us that "the Battle Mountain parties, other than those who disclaimed any interest in the property, had standing to raise the statute of limitations issue." *Mortgage Invs. Corp. v. Battle Mountain Corp.,* 70 P.3d 1176, 1182 (Colo.2003). The supreme court remanded the case to us for consideration, inter alia, of whether Article 8 of Colorado's Uniform Commercial Code supports the trial court's dismissal of Battle Mountain's claims and pleadings.

We now consider those issues.

## I. Equitable Title to BMC's Stock

Battle Mountain argues the trial court erred in finding that Tucker did not have an interest in BMC property because it did not consider whether Tucker owned equitable title to BMC's stock certificates. It contends that the enactment of Article 8 of the Colora-

do Uniform Commercial Code does not abrogate the common law principle allowing equitable transfer of securities. We perceive no error.

Article 8 of the Colorado Uniform Commercial Code governs the transfer of shares in a corporation. *See* § 4–8–101, et seq., C.R.S.2003. Corporate shares are "securities" for purposes of Article 8. Section 4–8–103, C.R.S.2003. Article 8 provides that a purchaser acquires rights in a certificated security when the purchaser takes possession of the security certificate. Sections 4–8–104(a)(1), 4–8–301(a)(1), 4–8–303, 4–8–406, C.R.S.2003.

In its motion for summary judgment, Mortgage Investments presented evidence that BMC's stock was certificated, that BMC had not authorized uncertificated stock, and that Tucker had never received BMC stock certificates, books, or records from Nevis. Therefore, Mortgage Investments argued, and the trial court found, that Tucker did not acquire ownership of BMC's property.

The interpretation of a statute is a question of law, subject to de novo review. *City of Colorado Springs v. Conners,* 993 P.2d 1167 (Colo.2000).

■ Equitable assignment of corporate stock, where there is a transfer of stock even though there is some technical defect in the mode of transfer, is recognized in Colorado. *See Arfsten v. Higby,* 150 Colo. 254, 372 P.2d 166 (1962). Although no appellate court in this state has addressed the issue, other states have held that the adoption of the Uniform Commercial Code does not abrogate the principle allowing equitable transfer of stock. *See Crow v. Newspaper Dealer Supply, Inc.,* 603 F.Supp. 847 (E.D.Mo.1985)(applying Missouri state law); *Andrews v. Troy Bank & Trust Co.,* 529 So.2d 987 (Ala.1988); *Tanner v. Robinson,* 411 So.2d 240 (Fla.Dist. Ct.App.1982); *In re Stewart Becker, Ltd.,* 405 N.Y.S.2d 571, 94 Misc.2d 766 (Sup.Ct. 1978); *see also* 1 Ronald A. Anderson, *Uniform Commercial Code* § 1–103:188, at 291–92 (3d ed.1996). We agree with those decisions.

■ However, equitable title claims are recognized in Colorado only where the rights of third parties would not be affected. *See Arfsten v. Higby, supra; see also Sky Harbor, Inc. v. Jenner,* 164 Colo. 470, 435 P.2d 894, 897 (1968)(a judgment lien creditor has priority over a person who holds only an equitable interest in the property). Thus, in *Arfsten,* the supreme court concluded that the enactment of the Uniform Stock Transfer Act, the predecessor to Article 8 of the Colorado Uniform Commercial Code, did not abrogate equitable ownership of stock, except where a third party may be misled by a party's noncompliance with the statute. *Arfsten v. Higby, supra,* 150 Colo. at 259, 372 P.2d at 168.

■ Here, Mortgage Investments was the holder of a deed of trust granted by BMC. Its rights would be affected by the sale of the corpus of BMC to Tucker, who then changed the name of the corporation and conveyed and encumbered the property subject to the deed of trust. As a result of these transactions, Mortgage Investments was misled by Miller's acquisition of a quitclaim deed to BMC's property and the Miller bankruptcy estate's waiver of all defenses to enforcement of the judgment and deed of trust. Therefore, because Mortgage Investments is a third party whose rights would be affected by Tucker's noncompliance with Article 8, we conclude that the principle allowing equitable transfer of stock does not apply in this case.

Thus, the trial court correctly concluded that because Tucker did not comply with Article 8, as a matter of law, he did not acquire ownership of BMC's property.

## II. Motion for New Trial

■ Battle Mountain also contends the trial court abused its discretion in denying its motion for new trial based on newly discovered evidence. Battle Mountain asserts that documents it received from the FDIC were newly discovered material evidence under C.R.C.P. 59(d)(4). We disagree.

C.R.C.P. 59(d)(4) provides that a new trial may be granted for "[n]ewly discovered evidence, material for the party making the application [for new trial] which that party could not, with reasonable diligence, have discovered and produced at the trial."

The trial court has considerable discretion in determining whether to grant a new trial on the ground of newly discovered evidence, and its ruling will not be disturbed in the

absence of a clear showing of an abuse of discretion. *Southeastern Colo. Water Conservancy Dist. v. O'Neill,* 817 P.2d 500, 506 (Colo.1991).

Mortgage Investments commenced this judicial foreclosure action in July 1998. Battle Mountain answered the complaint in August 1998. In May 1999, Battle Mountain filed a request for documents with the FDIC. In response, Battle Mountain received documents from the FDIC in October 1999. The trial court granted summary judgment in December 1999, two months after Battle Mountain received the documents from the FDIC. Because Battle Mountain had possession of the documents for two months prior to the trial court's judgment, but did not file them with the court, the FDIC documents were not newly discovered evidence within the meaning of C.R.C.P. 59.

Furthermore, C.R.C.P. 56(f) affords a party an opportunity to obtain an extension of time in which to seek additional evidence through discovery before the trial court rules on a motion for summary judgment. *See Dubois v. Myers,* 684 P.2d 940 (Colo.App.1984)(standards set forth in C.R.C.P. 59 are applicable to order for summary judgment). Here, no such motion was filed.

Thus, the trial court did not abuse its discretion in denying Battle Mountains motion for new trial.

The judgment is affirmed.

Judge NIETO and Judge STERNBERG * concur.