**MORTGAGE INVESTMENTS CORPORATION, a Colorado corporation, Petitioner,**

v.

**BATTLE MOUNTAIN CORPORATION; Anglo American Consolidated Corporation; Anglo America Consolidated Corporation; Conejos Advisors Co.; Sangre Consultants, Inc.; Apishapa Management, Inc.; Piney Lumber Co.; Pine Martin Mining Company; and Battle Mountain Limited Liability Co., Respondents.**

No. 02SC102.

Supreme Court of Colorado, En Banc.

May 12, 2003.

As Modified on Denial of Rehearing June 9, 2003.

Netzorg McKeever Koclanes & Bernhardt LLC, Gordan W. Netzorg, J. Nicholas McKeever, Jr., Susan Bernhardt, Denver, CO, Attorneys for Petitioner.

Appel & Lucas, PC, Garry R. Appel, Denver, CO, Attorney for Respondent.

Hall & Evans, L.L.C., Alan Epstein, Denver, CO, Murray Franke Greenhouse List & Lippitt L.L.P., Paul R. Franke, III, Attorneys for Amicus Curiae for Colorado Mortgage Lenders.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this case [1] to review the court of appeals decision in *Mortgage Invs. Corp. v. Battle Mountain Corp.*, 56 P.3d 1104 (Colo.App.2001). This is a C.R.C.P. 105 action brought by petitioner Mortgage Investments Corporation (MIC) to foreclose on a lien of a deed of trust. The trial court ruled that the respondent Battle Mountain parties had no legal interest in the real property and, therefore, struck their pleadings.[2] The court of appeals reversed, holding that the Battle Mountain parties had standing to assert the statute of limitations defense and that MIC's foreclosure was barred by the six-year statute of limitations contained in section 13–80–103.5, 5 C.R.S. (2002).

We disagree with the court of appeals' application of the six-year statute of limitations to this action. We hold that an action to foreclose on a deed of trust is governed by the fifteen-year limitations period contained in section 38–39–205, 10 C.R.S. (2002), when a party has commenced suit for default on the original promissory note within the six-year limitations period contained in section 13–80–103.5, 5 C.R.S. (2002), and thereafter has reduced the note to judgment. We reverse the court of appeals, order reinstate-

ment of MIC's foreclosure action, and remand this case to the court of appeals. On remand, the court of appeals must resolve an issue it did not previously reach, whether Article 8 of Colorado's Uniform Commercial Code supports the trial court's dismissal of the claims and pleadings of the Battle Mountain parties because Jeff Tucker (Tucker) failed to acquire ownership of Battle Mountain Corporation (BMC), thereby resulting in no legal interest in the property.

## I.

This case involves a C.R.C.P. 105 action brought by MIC in 1998 to foreclose on its lien of a deed of trust for real property (property) located in Eagle County, Colorado. The majority of the respondents appearing before us claim their interest through Tucker, as we discuss below. We refer to them as the Battle Mountain parties. They filed answers, counter claims, and cross claims alleging that they own the property in question, or have a security interest therein. AACC, Conejos Advisors Co., Sangre Consultants, and Apishapa Management, admitted in their answers that they no longer have any interest in the property. The trial court found that the interest held by Piney Lumber Company and Pine Martin Mining Company, if it exists, is through an independent chain of title that pre-dates MIC's deed and, therefore, is not affected by this foreclosure action.

In 1983, Battle Mountain Corporation (BMC), through its sole shareholder Thomas Nevis, signed a promissory note secured by a

1. We granted certiorari on the following issues: 1) Whether the court of appeals erred in holding, despite the fifteen-year limitations period of § 38–39–205, 10 C.R.S. (2002), for foreclosure under a deed of trust, that foreclosure is barred if not brought within six years after the first default under the promissory note secured by the deed of trust, even when the creditor timely filed an action on the note within the six-year period and obtained a valid judgment. 2) Whether the court of appeals erred in holding that the statute of limitations and other defenses may be raised by a corporate defendant to a foreclosure action, and that the foreclosing creditor may not challenge an individual's authority to raise the defenses on behalf of that corporate defendant, even though (a) the trial court held that the individual had no interest in either the corporation or in the

subject property, and (b) a different (and authorized) representative of the corporation has waived all defenses.

2. At a motions hearing, the trial court denied the motion of the Battle Mountain parties for summary judgment on the statute of limitations issue. It ruled that MIC had brought its C.R.C.P. 105 complaint for foreclosure on a deed of trust within the applicable fifteen-year statute of limitations period contained in section 38–39–205, 10 C.R.S. (2002). In its written order granting the motion of MIC for summary judgment, the trial court struck the Battle Mountain parties' claims and pleadings, including their statute of limitations defense, for lack of a legal interest in the property.

deed of trust on the property. The Federal Deposit Insurance Corporation (FDIC) eventually became the holder of the note. The FDIC sued for default on the note in 1990 and obtained a judgment in California for $7,485,907. In 1991, the California judgment was domesticated and recorded in Eagle County, Colorado. In 1993, the FDIC assigned the judgment and deed of trust to MIC. MIC brought a C.R.C.P. 105 proceeding to foreclose on the deed of trust in 1998.

In 1994, Nevis allegedly sold the "corpus" of BMC to Tucker. Tucker claimed that his lawyer sent a check for $1000 and a letter to Nevis offering to purchase the "corpus" of BMC. Tucker further claimed he became the sole shareholder of BMC when Nevis cashed the check. Tucker admitted, however, that he never received the BMC stock certificates, and he failed to produce any of BMC's records during the C.R.C.P. 105 proceeding. At the time of Tucker's alleged purchase, BMC was not in good standing with the secretary of state and the corporate name was no longer available. Consequently, Tucker changed BMC's name to Anglo American Consolidated Corporation (AACC).

In 1995, Nevis entered into a transaction with Miller in which Nevis sold all of his BMC shares to Miller and conveyed the property to him by quitclaim deed. Miller filed for bankruptcy in 1996. His assets included the BMC stock and property. The property became property of the bankruptcy estate, and the bankruptcy trustee waived all defenses to the MIC foreclosure action in 1998.

In 1996, AACC, through Tucker, granted 405 deeds of trust on the property to three of the Battle Mountain parties and conveyed parts of the property to three other Battle Mountain parties. Therefore, all of these interests are allegedly derived from Tucker's authority to convey the property. The trial court found, and the court of appeals agreed, that the 405 deeds of trust were invalid and void.

In 1998, MIC commenced a C.R.C.P. 105 foreclosure action against BMC based on the 1983 deed of trust. MIC served Tucker as "agent, manager and/or officer" of BMC.

MIC also served Miller through his bankruptcy trustee.

In March of 1999, the Battle Mountain parties filed a motion for partial summary judgment with the trial court claiming that MIC's foreclosure action was time-barred. MIC opposed the motion and filed a motion to strike all pleadings filed by the Battle Mountain parties claiming an interest acquired through Tucker, including the summary judgment motion. MIC claimed that Tucker never acquired ownership of BMC, because he never received the corporate stock or the corporation's records and, therefore, he was without authority to file pleadings or act on BMC's behalf. In addition, MIC asserted that since Tucker never owned BMC, the Battle Mountain parties that based their interest in the property on conveyances from Tucker had no interest in the property and lacked standing.

At a motions hearing the trial court orally ruled that MIC's action was not time-barred because section 13–80–103.5, 5 C.R.S. (2002), the general six-year statute of limitations, did not apply. The trial court determined that section 38–39–205, 10 C.R.S. (2002), the fifteen-year statute of limitations, applied because it was more specific, the promissory note had been reduced to judgment, and the deed of trust had been extended. In the words of the trial court: "The judgment's been extended, the deed of trust has been extended, the action was brought before the deed of trust statute of limitations ran out."

On December 16, 1999, the trial court issued a written order on the parties' cross-motions for summary judgment, entering summary judgment in favor of MIC on its foreclosure action and striking Battle Mountain's pleadings:

> Defendant Jeff Tucker never acquired ownership of the Battle Mountain Corporation and that the answer and motions filed by Battle Mountain Corporation were without authority. The Court therefore grants Plaintiff's motion to strike the Answer and Summary Judgment motions filed in the name of Battle Mountain Corporation.

The trial court provided no further explanation for its conclusion that Tucker had no interest in the property.

The court of appeals reversed. It held that under Colorado's ultra vires statute, MIC could not challenge Tucker's authority to act for BMC and the Battle Mountain parties had standing to raise the statute of limitations issue. The court of appeals then ruled that MIC's C.R.C.P. 105 foreclosure action was barred by the six-year statute of limitations under sections 13–80–103.5 and 13–52–102(1), 5 C.R.S. (2002).[3]

## II.

The four potentially applicable statutes of limitations in this case are these. First, section 13–80–103.5, 5 C.R.S. (2002), is a general statute of limitations that requires a party to bring an action to enforce obligations under a promissory note within six years of default. Second, section 38–39–207, 10 C.R.S. (2002), extinguishes the lien of the deed of trust if an action to enforce the promissory note is not brought within six years of default; conversely; if an action to enforce the promissory note is brought within six years of default and a judgment is thereafter obtained, the lien of the deed of trust is not extinguished and remains in effect. Third, section 13–52–102, 5 C.R.S. (2002), bars execution on the judgment lien six years after the date of the judgment, unless the judgment is revived. Fourth, section 38–39–205, 10 C.R.S. (2002), provides for a fifteen-year limitations period for foreclosure on a lien of a deed of trust that has not been extinguished.

Accordingly, we hold that, when a creditor reduces a promissory note to judgment through an action brought within six years of default on the promissory note, section 13–80–103.5, 5 C.R.S. (2002), the creditor may enforce payment of the debt in two ways. The creditor may obtain payment of the debt through execution on the judgment lien by an action commenced within six years of the entry of the judgment, section 13–52–102, 5 C.R.S. (2002); and/or the creditor may commence an action to foreclose on the deed of trust within the applicable fifteen-year statute of limitations provision, section 38–39–205, 10 C.R.S. (2002).

Before we proceed with our statute of limitations analysis, we first address the court of appeals' ultra vires and standing discussion. Although we conclude that the ultra vires statute does not apply to this case, we agree—contrary to MIC's argument—that the Battle Mountain parties had standing to assert a statute of limitations defense to the C.R.C.P. 105 foreclosure complaint.

### A.

### Ultra Vires and Standing

MIC argued in its motion for summary judgment that Battle Mountain did not have standing to challenge MIC's foreclosure action because Tucker never acquired a legal interest in the property and, therefore, his conveyances of the property to others were invalid.[4] The trial court agreed with MIC that Tucker had not acquired legal ownership of BMC or BMC's property. Therefore, the court granted MIC's motion for summary judgment and struck Battle Mountain's pleadings to the extent they were based on conveyances from Tucker. The trial court further held that Battle Mountain had failed to provide any evidence to support its claims of legal interest in the property cognizable in this C.R.C.P. 105 foreclosure action.

The court of appeals addressed the issue of Tucker's ownership of BMC and the trial court's summary judgment order in terms of ultra vires and constitutional standing principles. The court stated, "essentially the trial court found, that because Tucker had no authority to act on behalf of BMC he had no standing to litigate against MIC." The court ruled that MIC could not challenge Tucker's

---

**3.** The court of appeals affirmed the trial court's consolidation of case 98CV374 with case 94CV152 based on both the senior judge's authority and C.R.C.P. 42, and agreed that Miller's waiver of defenses did not waive defenses on behalf of BMC in general. These issues were not appealed to us and are final, in accordance with the judgment of the court of appeals.

**4.** It also argued that summary judgment was proper because the remaining parties' alleged interests were senior to the deed of trust.

authority to act for BMC under Colorado's ultra vires statute and that traditional standing rules do not apply to defendants.

We determine that the ultra vires statute does not apply in this case, but we agree that the Battle Mountain parties, other than those who disclaimed any interest in the property, had standing to raise the statute of limitations issue.

### 1.

### Ultra Vires

■ Colorado's ultra vires statute, section 7–103–104, 2 C.R.S. (2002), prohibits an individual's claim that a corporation is acting beyond the scope of its power.[5] This provision is designed to prevent challenges to a *corporation's* power to act. A corporation is a separate entity distinct from its officers. *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003).

■ Here, the question is whether Tucker had the power to act for the corporation, not whether the corporation had the power to act. Whether or not an individual has the authority to act on behalf of the corporation, as an officer, or purported officer, is a question of authority governed by principles of agency law. *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 41 (Colo.1997) (officers are agents of a corporation who must act within the proper scope of their authority to bind the corporation); William Meade Fletcher, *Fletcher Cyclopedia Corporations* §§ 266 & 434 (perm. ed. supp.2002)(as far as an individual's power to bind a corporation is concerned, his or her powers are governed by the general rules applicable to agents).

MIC did not challenge BMC's authority to assert defenses in the foreclosure proceeding. Rather, MIC challenged Tucker's authority to act on behalf of BMC.

There is a recognized distinction between a lack of authority on the part of the particular officers assuming to do a legal act for a corporation, and the lack of authority on the part of the corporation itself to do the act at all. In the former case, the act of the officers is unauthorized, in the latter, the act of the corporation itself is Ultra Vires.

William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 434 (perm. ed. rev.vol.1998).

The courts often refer to contracts as Ultra Vires where all that is meant is that a particular officer had no power to make the contract. In this class of cases, the question is merely one of agency and therefore governed by the well-settled rules of law relating to agency.

*Id.* at § 3401.

■ In this case, the court of appeals misapplied the ultra vires statute to MIC's challenge to both Tucker's authority to assert defenses on behalf of BMC and his authority to convey subsequent deeds to the other respondents. MIC was not challenging BMC's authority to defend, nor its interest in the property. Rather, MIC was challenging Tucker's ownership and, therefore, Tucker's authority to act as an officer or agent of BMC and his authority to transfer the property to others or further contest the foreclosure action. The ultra vires statute does not apply in this case.[6]

### 2.

### Standing

■ We have held that traditional standing principles do not apply to defendants. *See People ex rel. Simpson v. Highland Irr.*, 893 P.2d 122 (Colo.1995). Traditional concerns surrounding standing are not implicated when a defendant's standing is challenged; a defendant may assert an affirmative defense in response to a complaint, which asserts that the defendant has an interest in the action. *Id.* at 127–28.[7] The court of appeals was correct in holding that

---

5. Section 7–103–104, 2 C.R.S. (2002), entitled "Ultra Vires" provides:
 Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the *corporation lacks or lacked power to act.* (emphasis added).

6. By finding that Tucker never acquired ownership of BMC and was acting without authority,

the trial court rejected Tucker's argument that he was an agent of BMC. By recognizing the standing of the Battle Mountain parties to raise the statute of limitations issue, we do not find or hold that Tucker was an agent of BMC.

7. Typically, there is little concern that defendants will assert claims in which they have no stake; their interest will be in dismissal because they have no interest in the action.

the Battle Mountain parties had standing to raise the statute of limitations issue.

### B.

### Applicable Limitations Period

 We conduct de novo review of the question of law before us. *Gorman v. Tucker*, 961 P.2d 1126, 1128 (Colo.1998). Our fundamental responsibility when construing a statute is to give effect to the General Assembly's intent. *Martin v. People*, 27 P.3d 846, 851 (Colo.2001); *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996). We must read and consider the statute as a whole and give harmonious and sensible effect to all its parts, when possible. *Martin*, 27 P.3d at 851; *Gorman*, 961 P.2d at 1128. A court may consider the title of a statute as an aid in construing legislative intent. *Martinez v. Cont'l Enters.*, 730 P.2d 308, 313 (Colo.1986).

We conclude that the six-year statute of limitations, section 13–80–103.5, 5 C.R.S. (2002), is a general statute of limitations on the enforcement of debts, including those evidenced by a promissory note secured by a deed of trust. When, as here, a party brings an action for default on a promissory note within the six-year limitations period and thereafter reduces the note to judgment, the more specific six and fifteen-year limitations periods apply to the resulting judgment lien and the deed of trust respectively. The action before us is for foreclosure on a deed of trust, not execution upon a judgment lien, and the fifteen-year statute of limitations of section 38–39–205, 10 C.R.S. (2002), applies.

### 1.

### Statute of Repose versus Statute of Limitations

 The court of appeals held that the fifteen-year limitations period, section 38–39–205, 10 C.R.S. (2002), is a statute of repose. We disagree. A statute of limitations takes effect when a claim arises and determines how soon an action on the claim must commence, while a statute of repose bars bringing a claim after a certain period of time, regardless of whether an actual injury has occurred or a claim has arisen. *Two*

*Denver Highlands LLP v. Stanley Structures, Inc.*, 12 P.3d 819, 821 (Colo.App.2000). When a party is injured, a statute of limitations governs when that party must commence an action to recover on the injury. Under a statute of repose, if a party's injury occurs after the time specified, no action can be brought.

Section 38–39–205, 10 C.R.S. (2002), refers to when an action shall be commenced to foreclose the lien of any mortgage or deed of trust:

> Action to be brought within fifteen years. No action shall be commenced to foreclose the lien of any mortgage or deed of trust, unless such action is commenced prior to the date on which such mortgage or deed of trust ceases to be a lien pursuant to sections 38–39–201 and 38–39–202.

§ 38–39–205, 10 C.R.S. (2002). Sections 38–39–201 and 38–39–202, 10 C.R.S. (2002), combined, provide for a fifteen-year limitations period; therefore, we refer to section 38–39–205, 10 C.R.S. (2002), as the fifteen-year limitations statute.

In general, statutes of limitations contain language that an action "shall be commenced" within a specified time "after the cause of action accrues." *See* §§ 13–80–101 *et seq.*, 5 C.R.S. (2002). Section 38–39–205, 10 C.R.S. (2002), the fifteen-year limitations provision, contains the phrase "action shall be commenced," but does not contain the phrase "after the cause of action accrues." Statutes of repose often include the language, "but in no case shall such an action be brought more than" a specified number of years after an event upon which the action is based. *See* §§ 13–80–102.5(1), 13–80–104(1)(a), 13–80–105(1), 5 C.R.S. (2002). Periods of repose are often contained in the same provision as the period of limitation. The fifteen-year limitations statute, section 38–39–205, 10 C.R.S. (2002), does not contain the phrase "but, in no case" or any similar language like most statutes of repose.

In addition, the provision is contained in Part 2 of Article 39, titled "Mortgages, Deeds of Trust, and Other Liens." Part 2 of Article 39 is titled "Limitations." Consequently, we determine that the General Assembly's

choice of language and the title of the provision indicate legislative intent that section 38–39–205, 10 C.R.S. (2002), the fifteen-year provision, is a statute of limitations, not a statute of repose.[8]

### 2.

### The Limitations Period Applicable to this Case

Four limitations provisions are implicated in this case. The two primary provisions are section 13–80–103.5, 5 C.R.S. (2002), the general six-year limitation on the enforcement of debts, and section 38–39–205, 10 C.R.S. (2002), the fifteen-year limitation on foreclosure on the lien of a deed of trust. Also important are section 13–52–102, 5 C.R.S. (2002), the six-year limitation on execution of judgment liens, and section 38–39–207, 10 C.R.S. (2002), governing when a lien is extinguished.

In commencing our analysis regarding the limitations period applicable to this case, we summarize our conclusion, then proceed with our discussion. This case involves a debt that was originally evidenced by a promissory note and a deed of trust against the property as security for payment of the debt. The FDIC timely sued for default on the promissory note, instead of foreclosing on the property, and obtained a judgment. The judgment then evidenced the debt, but the debt was not discharged. When the judgment was filed with the applicable court and the transcript of judgment was recorded in Eagle County, the original 1983 debt was secured by both the lien of the deed of trust against the property and a judgment lien against any property owned by BMC in Eagle County. At this point, the creditor, MIC, could enforce payment of the debt by foreclosing on the lien of the deed of trust, execution upon judgment under the judgment lien on the debtor's property, or both. MIC did not enforce the judgment lien within the applicable six-year limitations period for judgment liens, so that alternative was unavailable, but it did commence foreclosure on

the lien of the deed of trust within the applicable fifteen-year statute of limitations.

### a.

### Section 13–80–103.5:

### General Six–Year Limitations Period for Enforcement of Debts

 Section 13–80–103.5, 5 C.R.S. (2002), is a general limitations provision that is broad in scope and includes many types of instruments that secure a debt. In relevant part, section 13–80–103.5(1)(a), 5 C.R.S. (2002), provides:

> The following actions shall be commenced within six years after the cause of action accrues, and not thereafter:
>
> (a) all actions for the enforcement of rights set forth in any instrument securing payment of or evidencing any debts, and all actions securing any debt . . .

 An action for default on a promissory note falls within the six-year statute of limitations period. *See Martinez*, 730 P.2d at 312 (the period of limitations for any action on a promissory note in default is six years). A claim for relief on a promissory note accrues the day the note matures or the date of default. *Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244, 1246 (Colo.1994).

BMC defaulted on the promissory note, and the FDIC (which then held the note) sued on the note in California. The FDIC obtained a judgment for $7,485,907 on June 4, 1990. The judgment was domesticated and recorded in Eagle County, Colorado on May 20, 1991. The Battle Mountain parties do not assert that the FDIC failed to bring an action on the promissory note within the applicable six-year period after default.

 When a debtor defaults on a promissory note, a creditor may elect which remedy the creditor wishes to pursue. A creditor may enforce payment of the debt by: 1) foreclosing on the lien of the deed of trust, 2) pursuing a suit for judgment upon default and filing the transcript of the judgment to

---

**8.** The court of appeals relied on our language in *Martinez*, 730 P.2d at 313–14, that the fifteen-year period was an outer limit for determining whether a lien is still viable to support its deter-

mination that § 38–39–205 is a statute of repose. What type of limitation the section contains was not in issue in *Martinez* and was not part of our holding in that case.

obtain a judgment lien that allows for execution upon the judgment of the debtor's property,[9] or 3) both. *See Foothills Holding Corp. v. Tulsa Rig, Reel & Mfg. Co.,* 155 Colo. 232, 393 P.2d 749, 751 (1964)(suit on a promissory note and an action against particular property may be pursued concurrently or consecutively); *Greene v. Wilson,* 90 Colo. 562, 11 P.2d 225, 226 (1932) (the holder of a note secured by a deed of trust can sue on the note, or sue to foreclose on the deed of trust, or join both proceedings; if the party sues on the note and obtains a judgment, but does not collect the judgment, he or she may still foreclose on the deed of trust); *Gale v. Rice,* 636 P.2d 1280, 1282 (Colo.App.1981); *Foster Lumber Co. v. Weston Constr., Inc.,* 33 Colo.App. 436, 521 P.2d 1294, 1297 (1974); *see also,* 2A Cathy Stricklin Krendl, Colorado Methods of Practice § 75.1 (4th ed.1997)(a creditor may commence an action to reduce a note to judgment; in such cases the lien of the deed of trust is neither waived nor lost).

■ When a creditor elects to sue on a promissory note after a debtor defaults and the creditor obtains a judgment, the note loses its identity and merges into the judgment. *Ott v. Edwards,* 161 Colo. 187, 420 P.2d 837, 838 (1966); *Hiller v. Matheny,* 81 Colo. 459, 256 P. 10, 11 (1927). At this point, the form of the debt has changed, but the merger and extinguishment of the note do not discharge the debt or extinguish the lien of the deed of trust. *Hiller,* 256 P. at 12. After merger, the debt is evidenced by the judgment and secured by the deed of trust. *Ott,* 420 P.2d at 838.

Accordingly, when a creditor has successfully sued to enforce a promissory note within the time limitations contained in section 13–80–103.5, 5 C.R.S. (2002), the creditor has a right to collect on the judgment. A judgment on the promissory note does not discharge the debt. If the creditor does not collect on the judgment, the creditor may foreclose on the lien of the deed of trust, or if the creditor has recorded the transcript of the judgment with the county and obtained a judgment lien, the creditor may collect the debt through execution upon the judgment lien on property owned by the debtor in the county, in addition to, or in lieu of, foreclosure on the deed of trust. *See* § 13–52–102, 5 C.R.S. (2002); 59 C.J.S. *Mortgages* § 494 (1990) (upon default a creditor may pursue foreclosure or a suit on the note concurrently or successively because the actions are independent, separate, and distinct remedies; election to pursue one does not bar another until the underlying indebtedness is extinguished). Although both courses of action could fall within the parameters of section 13–80–103.5, 5 C.R.S. (2002), the General Assembly provided more specific limitations periods for these actions.

■ In the absence of a clear expression of legislative intent to the contrary, a statute of limitations specifically addressing a particular class of cases will control over a more general or catch-all statute of limitations. *Persichini v. Brad Ragan, Inc.,* 735 P.2d 168, 172–73 (Colo.1987). Section 13–80–103.5 is a general and broad limitations provision that encompasses "*all* actions for the enforcement of rights set forth in *any* instrument securing payment of or evidencing any debts." § 13–80–103.5(a), 5 C.R.S. (2002) (emphasis added). Sections 13–52–102, 5 C.R.S. (2002), and 38–39–205, 10 C.R.S. (2002), are specific limitations provisions that apply to actions to collect payment of a debt through execution on judgment liens and foreclosure actions on deeds of trust. Therefore, the specific provisions control a creditor's execution on a judgment lien and foreclosure on a lien of a deed of trust, once the creditor has sued on the promissory note within the six-year period provided for in section 13–80–103.5(1)(a), 5 C.R.S. (2002), and reduced it to judgment.

If, however, a creditor fails to sue to enforce the promissory note after default within the six-year limitations period, the creditor's right to foreclose on the lien of the deed of trust is extinguished under section 38–39–207, 10 C.R.S. (2002). Section 38–39–207 provides:

The *lien created by any instrument* shall be extinguished, regardless of any other provision in this article to the contrary, at the same time the right to *commence a suit to enforce payment of the indebtedness* or performance of the obligation secured by the lien·is barred by any statute

---

9. *See* §§ 13–52–101 *et seq.,* 5 C.R.S. (2002)(property subject to levy); 13–56–101 *et seq.,* 5 C.R.S. (2002)(levy and sale).

of limitations of this state. (emphasis added).

If a party does not commence suit on a promissory note within six years of default, the deed of trust is extinguished because the six-year limitations period in section 13–80–103.5(1)(a), 5 C.R.S. (2002), would bar enforcement of the promissory note; therefore, the lien would be extinguished under section 38–39–207, 10 C.R.S. (2002).[10] *Martinez*, 730 P.2d at 313 ("under [section 38–39–207], when an action to recover on a promissory note is barred, any lien securing such note is extinguished"). But, if a party commences suit on the promissory note within six years of default, subsequent collection of payment of the debt through execution on a judgment lien or foreclosure on the lien of the deed of trust is not barred by section 38–39–207, 10 C.R.S. (2002).

■■■ In the case before us, the FDIC timely sued on the promissory note for default, and the note was reduced to judgment. The FDIC domesticated and recorded the judgment in Eagle County in 1991, creating a judgment lien. Accordingly, the lien on the deed of trust was not extinguished, leaving the FDIC and its successor in interest, MIC, with two payment alternatives having different limitations periods. An action to obtain payment of the debt through execution on the judgment lien is governed by the six-year statute of limitations, section 13–52–102, 5 C.R.S. (2002), and an action to obtain payment of the debt through foreclosure on the lien of the deed of trust is governed by the fifteen-year statute of limitations, section 38–39–205, 10 C.R.S. (2002).

b.

Section 13–52–102:

Six–Year Limitations Period on Execution of Judgment Liens

■■■ A party may not obtain payment of a debt through execution on a judgment lien after the six-year limitations period has passed unless the judgment is revived. Section 13–52–102(1), 5 C.R.S. (2002), provides in pertinent part:

A transcript of the judgment record of such judgment, certified by the clerk of such court may be recorded in any county; and from the time of recording such transcript and not before, the judgment shall become a lien upon all the real estate, not exempt from execution in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county until such lien expires. The lien of such judgment shall expire six years after entry of judgment unless, prior to the expiration of such six-year period, such judgment is revived as provided by law ...

The six-year limitations period runs from the date of judgment, not the date the judgment is filed in Colorado. *Baum v. Baum*, 820 P.2d 1122, 1123 (Colo.App.1991). The running of the statute of limitations governing collection of payment of the debt through execution on the judgment lien, however, does not extinguish the debt. *See Estate of Ramsey v. State Dep't of Revenue*, 42 Colo. App. 163, 591 P.2d 591, 595 (1979).

The California judgment against BMC was domesticated and recorded in Colorado in 1991. MIC did not revive the judgment. Therefore, the six-year limitations period for collection of payment of the debt through execution on the judgment lien ran, and MIC could no longer enforce payment of the debt through execution of that lien.

c.

Section 38–39–205:

Fifteen–Year Limitation on Deed of Trust Foreclosure

Unless extended, a lien on property created by a deed of trust ceases to be a lien

---

**10.** Section 38–39–206, 10 C.R.S. (2002), provides that:

This article shall not be construed as extending any lien or the right to bring or maintain any action for which a shorter period may be provided by law.

Under this provision, the fifteen-year limitation period in section 38–39–205, 10 C.R.S. (2002), cannot be used to extend the six-year limitations period for filing an action for default on a promissory note; but, section 38–39–206 does not limit the fifteen-year statute of limitations period for foreclosure on a deed of trust when the promissory note is reduced to judgment by an action commenced within the six-year statute of limitations period.

fifteen years after the date on which final payment or performance is due. § 38–39–201(1), 10 C.R.S. (2002). If the date on which the final payment or performance is due cannot be determined from the information contained in the deed of trust, such date shall be considered to be the date of the recorded instrument or if the deed is undated, the date the instrument was first recorded. § 38–39–201(2), 10 C.R.S. (2002).

Section 38–39–205, 10 C.R.S. (2002), provides a specific limitations period for foreclosure on a deed of trust:

No action shall be commenced to foreclose *the lien of any mortgage or deed of trust*, unless such action is commenced prior to the date on which such mortgage or deed of trust ceases to be a lien pursuant to sections 38–39–201 and 38–39–202. (emphasis added).

Sections 38–39–201 and 38–39–202, 10 C.R.S. (2002), combined, provide for a fifteen-year limitations period for foreclosure on a lien of a deed of trust that has not been extinguished under section 38–39–207, 10 C.R.S. (2002).

█ In the case before us, the FDIC sued on the promissory note within the applicable six-year period and thereafter reduced the note to judgment. The deed of trust in this case does not specify the date on which the original obligation, the promissory note, must be paid. The date of the original deed of trust is September 1, 1983. Therefore, the fifteen-year statute of limitations period extended to September 1, 1998 or fifteen years from the date of the deed under section 38–39–201, 10 C.R.S. (2002).[11] MIC filed the action to foreclose on the deed of trust on July 13, 1998, within the fifteen-year limitations period. Consequently, MIC's foreclosure action on the deed of trust is not barred by the applicable statute of limitations.

### C.

### Battle Mountain Parties' Interest in the Property

█ In its motion for summary judgment, MIC contended that Tucker never received BMC's stock from Nevis or BMC's books and records necessary to prove he was the registered owner of uncertificated shares; thus, he never acquired ownership of BMC's property. In addition, MIC presented evidence that the stock of BMC was certificated. Article 8 of the Colorado Uniform Commercial Code governs acquisition of legal ownership of certificated shares of a corporation and generally requires that a purchaser receive the security certificate or certified stock of the corporation. *See* §§ 4–8–104(a)(1), 4–8–301(a)(1), 4–8–303, & 4–8–406, 2 C.R.S. (2002). The Battle Mountain parties argued that the trial court failed to determine whether Tucker had equitable title to BMC. Generally, a party may not assert equitable title in a dispute between a transferee and a third party. *See Arfsten v. Higby,* 150 Colo. 254, 372 P.2d 166, 168 (1962) (equitable title claims are appropriate "where rights of third parties are not present"); *see also, Sky Harbor, Inc. v. Jenner,* 164 Colo. 470, 435 P.2d 894, 897 (1968) (a judgment lien creditor has priority over a person who holds only an equitable interest in the property); *Shearton Serv. Corp. v. Johnson,* 5 P.3d 395, 397 (Colo.App.2000) (same).

█ Because the court of appeals dismissed MIC's foreclosure action as beyond the statute of limitations, it did not determine whether the trial court's summary judgment order striking the Battle Mountain parties' claims and pleadings was correct. *See Mortgage Invs. Corp.,* 56 P.3d at 1109. On remand, the court of appeals must resolve whether Article 8 of Colorado's Uniform Commercial Code supports the trial court's dismissal of the Battle Mountain parties' claims and pleadings because Tucker failed to acquire ownership of Battle Mountain Corporation (BMC), thereby resulting in no legal interest in the property.

### III.

█ We hold that an action to foreclose on a lien of a deed of trust is governed by the fifteen-year limitations period contained in section 38–39–205, 10 C.R.S. (2002), when a party has commenced suit for default on the

---

11. Under section 38–39–201(2), "[i]f the date on which final payment or performance is due cannot be determined from the information contained in the recorded mortgage or deed of trust, such date shall, for the purpose of this article, be considered to be the date of the recorded instrument."

original promissory note within the six-year limitations period contained in section 13–80–103.5, 5 C.R.S. (2002), and thereafter has reduced the note to judgment. Accordingly, we reverse the court of appeals and hold that MIC's action to foreclose on the lien of the deed of trust is not barred by the statute of limitations. We order reinstatement of MIC's foreclosure action, and we remand this case to the court of appeals for further proceedings consistent with this opinion, including decision of any issues remaining on appeal that are properly before that court.

Justice KOURLIS and Justice BENDER do not participate.