QUESTIONS PRESENTED AND CONCLUSIONS
1. Question: May a county that has one or more mines receive money distributed pursuant to §34-63-102(3)(b)(III), C.R.S. (2005), if no employee of a mine or related facility (hereinafter "mine employee") resides in the unincorporated areas of the county?
Conclusion: When a county has no resident mine employees, it is not entitled to funds distributed pursuant to § 34-63-102(3)(b)(III).
2. Question: How should funds generated from a county with a mine but no employees be distributed pursuant to § 34-63-102(3)(b)(III)?
Conclusion: The question presumes that the county in which the mine is located is both the source of the funds and the immediate beneficiary. Neither presumption is accurate. The funds belong to the State and are distributed in accordance with the formula set forth in § 34-63-102(3)(b)(III).
 BACKGROUND
The United States receives money from the sales, bonuses, royalties and rentals under the Federal Mineral Lands Leasing Act. 30 U. S. C. § 191(a). A portion of these funds is given to the States to pay for the social and economic impacts caused by the federal mining leases. Id.
Colorado's share of the funds is placed in the mineral leasing fund ("Fund"). § 346-3-102(1)(a), C.R.S. (2005). The Fund must be used for the benefit of the public schools and the political subdivisions of the State that are "socially or economically impacted by the development, processing or energy conversion of fuels and minerals leased under" the federal law. §34-63-102(1)(b), C.R.S. (2005). The funds are distributed according the formula established in §34-63-102, C.R.S. (2005). Twenty-five percent of the Fund must be paid into the public school fund. §34-63-102(2)(a), C.R.S. (2005). Ten percent of the Fund is paid into the Colorado water conservation board construction fund. § 34-63-102(4), C.R.S. (2005). Fifteen percent is deposited in the local government mineral impact fund. § 34-63-102(5), C.R.S. (2005). The remaining fifty percent is distributed to the counties from which the federal leasing money is derived in accordance with the formula set forth in § 34-63-102(3), C.R.S. (2005).
The formula for the distribution to the counties is complicated. Section 34-63-102 (3)(a), C.R.S. (2005) requires fifty percent of all monies to be distributed to counties (including municipalities within the county) "in proportion to the amount of said federal leasing money derived from each of the respective counties." No county (including municipalities within the county) can receive more than 1.2 million dollars in any calendar year. Id. Fifty percent of the balance remaining after payment to the affected counties must be paid into the state school fund. § 34-63-102 (3)(b)(I), C.R.S. (2005). Any balance of the funds placed in the public school fund in excess of 10.1 million dollars must be placed in the local government mineral impact fund. §34-63-102(3)(b)(II), C.R.S. (2005).
Of the amount deposited in the local government mineral impact fund pursuant to § 34-63-102(3)(b)(II), twenty-five percent "shall be distributed annually to each county, in whose unincorporated area employees of a mine or related facility from which such money is derived reside, in the same proportion that the number of such employees bears to the total number of employees of such mines and related facilities who reside in the state and to each municipality, in which employees of such facilities reside, in the same proportion that the number thereof bears to the total number of employees of such mines and related facilities who reside in the state." § 34-63-102(3)(b)(III), C.R.S. (2005).
Since the enactment of § 34-63-102(3)(b)(III), affected counties had both mines and residents who were mine employees. In the past, the Department of Local Affairs has employed the "county of origin" approach to distribution of funds. Under this approach, a county must have within its boundaries a mine or related facility qualified for payment under the federal law. If a county has a mine or related facility within its boundaries, but does not have mine employees who reside within the county, the county still would receive funds under § 34-63-102(3)(b)(III). If a county does not have a mine within its boundaries but has mine employees domiciled in the county, it would not receive funds under this section. For the following reasons, the "county of origin" approach cannot be used to distribute funds pursuant to § 34-63-102(3)(b)(III).
 ANALYSIS
1. In construing a statute, courts must effectuate the intent and purpose of the General Assembly. Weld CountySch. Dist. RE-12 v. Bymer, 955 P.2d 550, 554 (Colo. 1998). It should be read as a whole, giving sensible effect to all of its parts whenever possible. Mortgage Invs. v. Battle Mountain, 70 P.3d 1176, 1183 (Colo. 2003). Clear statutory provisions need to be applied in a manner consistent with their plain and ordinary meaning. Vigil v. Franklin, 103 P.3d 322, 327 (Colo. 2004). If the statutory provisions are unclear, ambiguous, or susceptible to different interpretations, the legislative intent, including the object the legislature sought to obtain by the enactment, the circumstances under which it was adopted, and the consequences of a particular construction, must be reviewed. Anderson v. Longmont Toyota, Inc., 102 P.3d 323,327 (Colo. 2004).
The language of the statute differentiates between distributions made on the basis of the location of the mine and distributions made on the basis of the residence of mine employees. Section 34-63-102(3)(a) authorizes distribution of funds "in proportion to the amount of said federal leasing money derived from each of the respective counties." In other words, money will be distributed to the counties in which mines or related facilities are located based upon the amount of money generated by those mines or related facilities.
Distributions made pursuant to the formula in §34-63-102(3)(b)(III) are based solely upon the domicile of mine employees. The formula is based upon the number of mine employees who reside within a county. Nothing in the language of this subsection authorizes the State to factor in the location of the mines.
This interpretation is consistent with the underlying purpose of the Fund. Mortgage Invs. Corp. v. BattleMountain Corp., 70 P.3d 1176, 1183 (Colo. 2003). Priority must be given to public schools and political subdivisions socially or economically impacted by the development, processing or energy conservation of fuels and minerals leased under said Federal Mineral Lands Leasing Act. § 34-63-102(1)(b). The impact is not limited to the county in which the mine is located. For instance, a mine may be located in one county but most of the mine's employees reside in a neighboring county that does not have any mines within its boundaries. The neighboring county is impacted because it must provide basic government services such as road maintenance and police and fire protection to the mine's employees.
It is recognized that this interpretation of (3)(b)(III) is inconsistent with the Department of Local Affairs' long-standing practice. However, when an administrative policy is in clear contravention of the plain language of a statute, the administrative policy cannot stand. Bureau of Alcohol, Tobacco and Firearmsv. Federal Labor Relations Authority, 464 U. S. 89, 97
(1983).
For the foregoing reasons, a county must have at least one resident mine employee within its borders in order to receive funds in accordance with § 34-63-102(3)(b)(III), C.R.S. (2005). A county with a mine but no mine employees within its boundaries cannot receive distributions under this subsection.
2. The second question at issue here concerns the distribution of funds generated from a county with a mine but no mine employees within its boundaries. This question is based upon two premises: (1) the counties are the source of the funds; and (2) the counties are the immediate beneficiaries. Both premises are incorrect. The funds are generated from leases of land owned by the United States in Colorado. 30 U. S. C. § 181et seq. Both federal and state laws clearly provide that the State is the intended beneficiary. 30 U. S. C. § 191(a) (monies from leases "shall be paid by the Secretary of the Treasury to the State . . . within the boundaries of which the leased lands or deposits are or were located" and must be used "as the legislature may direct"). The money is "the state's share" of remuneration from the leases. § 34-63-101, C.R.S. (2005). Thus, the money generated from mines located in a county that does not have mine employees is never allocated to that county under § 34-631-02 (3)(b)(III). The money remains a part of the local government impact fund administered by the State and is distributed to counties in which mine employees reside.
 CONCLUSION
Only those counties in which mine employees reside are entitled to receive funds under § 34-63-102(3)(b)(III). The State may not consider the location of mines when distributing funds pursuant to this section.