RAYMOND P. MOORE, United States District Judge
At issue is whether Defendants Ocwen Loan Servicing, LLC ("Ocwen") and HSBC Bank USA, N.A., as Trustee on behalf of Ace Securities Corp. Home Equity Loan Trust and for the Registered Holders of Ace Securities Corp. Home Equity Loan Trust, Series 20070HE2, Asset Backed Pass-Through Certificates, ("HSBC") (Ocwen and HSBC, collectively, "Defendants") wrongly assessed charges and fees, and claimed default, on a loan made to Plaintiff Carlee C. Carson ("Carson").
*1166 This matter is before the Court on Defendants' Revised Motion for Summary Judgment (the "Motion") (ECF No. 66 ) seeking summary judgment in their favor on the remaining five claims in this case. Plaintiff Carlee C. Carson ("Carson") has filed a Response in Opposition (the "Response") (ECF No. 76 ), to which Defendants have filed a Reply in Support (the "Reply") (ECF No. 79 ). The matter is ripe for resolution.
I. FACTUAL AND PROCEDURAL BACKGROUND
In August 2006, Carson borrowed $ 136,000 from People's Choice Home Loan, Inc. to purchase property in Palmer Lake, Colorado (the "Property"). The loan was secured by a Promissory Note (the "Note") and Deed of Trust (the "DOT") (collectively, the "Mortgage Loan"). The Mortgage Loan contains provisions which, as relevant here, covered assessment of charges and fees, insufficient payments, escrow for taxes and insurance, and defaults. Payments were due on the first day of each month beginning October 1, 2006.
On November 1, 2006, Ocwen acquired servicing rights to the Mortgage Loan. By January 2007, Carson began receiving phone calls from Ocwen claiming the Mortgage Loan was in default by failing to make the monthly payments due. The parties dispute whether Ms. Carson was in default as Ocwen claimed. By March 2011, Carson retained an attorney to assist with her disputes with Defendants over the Mortgage Loan.[1]
In or about July 2011, Carson entered into a Loan Modification Agreement (the "Modification Agreement"). The Modification Agreement required an initial down payment of $ 812.42, which Carson paid, and payment of principal and interest ("PI") of $ 655.40 thereafter. The parties dispute when Carson's obligation to make payments would begin - Ocwen asserts the regular payment obligation would begin on August 1, 2011 (as provided in the Modification Agreement), while Carson asserts that it was not to begin until she received a fully executed Modification Agreement. It is, however, undisputed that Carson did not pay until November 2011, after she received the fully executed Modification Agreement.
The Modification Agreement did not set forth what amounts, if any, were required to be escrowed for taxes and insurance. However, prior to the receipt of the executed Modification Agreement, Carson received an Annual Escrow Account Disclosure Statement Projections for Coming Year ("Escrow Statement") dated September 9, 2011, for the upcoming escrow year (November 2011 to October 2012).[2] (ECF No. 66-11, pp. 4-7.) The Escrow Statement provided that beginning November 1, 2011, Carson's monthly mortgage payment would increase to $ 944.90, consisting of $ 655.40 in PI and $ 289.50 in taxes and insurance (collectively, "PITI"), due to an anticipated escrow shortage for the coming *1167 escrow year. Carson, however, did not always pay this amount; she sometimes paid less. Many of Carson's payments for the escrow year was also late. Ocwen declared Carson's account to be in default and held Carson's payments in a suspense account because they were insufficient to cover the monthly $ 944.90 PITI.
Ocwen thereafter sent Carson other annual escrow statements, calculating the PITI for the upcoming escrow year, based on the projected escrow needed for taxes and insurance. Carson contends that she did not receive many of the annual escrow statements. Nonetheless, Carson did make payments, though they were generally not for the amounts Ocwen calculated as due and were generally not timely made. Carson admits she "consistently" received monthly statements from Ocwen, but asserts the statements were inconsistent in the amounts stated to be due and owing. The Court has not been provided with copies of all the disputed monthly statements. The few monthly statements that were provided show the total amounts did vary from month to month, apparently due to the assessment of fees and other costs, but the monthly PITI did not. (See ECF No. 79-8.)
At some point in time, Carson, through counsel, requested information to support fees and costs Defendants assessed on the Mortgage Loan (as modified). Defendants provided information to Carson but the parties dispute the sufficiency of the information provided. It is unclear to the Court exactly what was requested and what was provided.[3]
Beginning in 2009, Carson filed several disputes with the credit reporting agencies, who then notified Defendants. Defendants assert they properly investigated Carson's credit disputes but did not report the account as disputed. This lawsuit followed on December 2, 2015.[4]
In December 2016, during the pendency of this case, Carson sold the Property. At that time, Carson paid the amounts Defendants claimed were due and owing under the Mortgage Loan, as modified, but disputed the amounts claimed.
Carson raised several claims in this action but some have been dismissed. The claims which remain are: (1) breach of contract - Defendants allegedly failed to adhere to their obligations and comply with the terms and conditions of the Mortgage Loan; (2) breach of the duty of good faith and fair dealing implied in the Mortgage Loan; (3) violation of the Fair Credit Reporting Act ("FCRA"); (4) violation of the Fair Debt Collection Practices Act ("FDCPA"); and (5) unjust enrichment. Defendants seek summary judgment on all claims.
II. STANDARD OF REVIEW
Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) ; Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Gutteridge v. Oklahoma , 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Stone v. Autoliv ASP, Inc. , 210 F.3d 1132, 1136 (10th Cir. 2000) ;
*1168 Carey v. United States Postal Serv. , 812 F.2d 621, 623 (10th Cir. 1987). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. See 1-800-Contacts, Inc. v. Lens.com, Inc. , 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). The Court, however, is "not obligated to comb the record in order to make [a party's arguments]." Mitchell v. City of Moore, Okla. , 218 F.3d 1190, 1199 (10th Cir. 2000). Further, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris , 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). The facts, however, must be considered in the light most favorable to the nonmoving party. Cillo v. City of Greenwood Vill. , 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).
III. ANALYSIS
A. Statute of Limitations
Carson filed this action on December 2, 2015. The parties do not dispute the following limitations of actions apply: (1) one-year for the FDCPA claim; (2) two-year for the FCRA; and (3) three-year for unjust enrichment. The parties dispute whether the three-year statute of limitations ( Colo. Rev. Stat. § 13-80-101(1)(a) ) or the six-year statute of limitations ( Colo. Rev. Stat. § 13-80-103.5 ) applies to the breach of contract and breach of the duty of good faith and fair dealing claims. Defendants contend it is the three-year statute while Carson contends it is the six-year statute.
The Court finds that, based on the arguments of the parties and the claims asserted, the six-year statute of limitations under Colo. Rev. Stat. § 13-80-103.5(1)(a) applies for two reasons. First, "[i]n the absence of a clear expression of legislative intent to the contrary, a statute of limitations specifically addressing a particular class of cases will control over a more general or catch-all statute of limitations." Mortgage Inv. Corp. v. Battle Mountain Corp. , 70 P.3d 1176, 1185 (Colo. 2003) (citation omitted). Section 13-80-101(1)(a), upon which Defendants rely, is the more general statute of the two at issue.
Second, § 13-80-101(1)(a) specifically excepts actions which fall within § 13-80-103.5.[5] Actions which fall within § 13-80-103.5(1)(a) include those "for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt." Here, Carson's claims, as pled, are for the enforcement of rights afforded under the Mortgage Loan, e.g. , for fees to be assessed only if she is in default, and only for fees permitted under the loan documents. Accordingly, the six-year statute applies. See Mortgage Inv. Corp. , 70 P.3d at 1184 (action for default on promissory note is six-years); see generally Castle Rock Bank v. Team Transit, LLC , 292 P.3d 1077, 1081 (Colo. App. 2012) (applying six-year statute of limitation to lender's action to recover under two promissory notes, where parties did not dispute its application).
Defendants cite to a few cases applying a three-year statute of limitations under § 13-80-101(1)(a) but the Court finds them *1169 inapposite. For example, in Clementson v. Countrywide Fin. Corp. , 464 F. App'x 706 (10th Cir. 2012), the contract at issue was not the mortgage loan but an alleged agreement to provide the borrower with a loan modification. Clementson v. Countrywide Fin. Corp. , No. 10-cv-01956-WYD-KMT, 2011 WL 1884715, at *2-3 (D. Colo. Jan. 27, 2011), recommendation adopted , 2011 WL 1884627 (D. Colo. May 18, 2011). Similarly, in Grillo v. JP Morgan Chase & Co. , No. 13-cv-03233-RBJ-KLM, 2014 WL 4470439 (D. Colo. Sept. 8, 2014), Grillo's contract claim was based on requests for corrections to alleged erroneous reporting to credit bureaus. And, in Davidson v. Bank of America, N.A. , No. 14-cv-01578, 2016 WL 922872 (D. Colo. Mar. 11, 2016), Davidson's claims were based on the mortgage documents but he did not challenge whether the three-year statute of limitations applied. In summary, the Court agrees with Carson that the six-year statute of limitations applies to the breach of contract and breach of good faith and fair dealing claims.
B. Carson's alleged Default on or after December 2, 2012
Defendants assert that Carson's alleged default after December 2, 2012 must result in judgment in their favor on all claims. The Court rejects that assertion for several reasons. First, as a six-year statute of limitations applies, alleged events before December 2, 2012 may also be at issue.[6] Second, as Carson argues, even assuming, arguendo , she did default after December 2, 2012, she challenges the validity of the interest, fees, and costs assessed. And, Defendants do not contend that, under the terms of the Mortgage Loan, they are free to assess whatever they wish.[7] Third, Defendants provide sweeping arguments but fail to address the elements of the five claims and how any alleged default renders Carson unable to establish any of such claims. Finally, the Court finds there are genuine issues of material fact as to Carson's alleged default.
Specifically, Defendants assert Carson has been in default under the Modification Agreement since October 2011. The Court, however, finds there are genuine issues of material fact concerning such default. For example, there is a triable issue of fact as to when Carson defaulted and, accordingly, the validity of the assessments at issue. While the facts show Carson received the September 9, 2011 Escrow Statement informing her of the amount of the PITI starting November 1, 2011, Carson argues the Modification Agreement was not effective unless she received an executed copy of the agreement. Her argument is supported by the terms of the Modification Agreement which states the Mortgage Loan "will not be modified unless and until (1) you receive from Ocwen a copy of this Agreement signed by Ocwen...." (ECF No. 66-10, p. 2, par. 1.) Here, Carson's declaration states she did not receive an executed agreement until after October 2011, i.e., sometime in November 2011. If so, Defendants' arguments fail to show how Carson could be, or that Carson was, in default prior to November 2011. Accordingly, summary judgment may not be had based on Defendants' default argument.
C. Good Faith and fair Dealing
Defendants argue that Carson's claim for breach of the duty of good faith and fair dealing fails because she does not allege that Defendants were granted discretion *1170 in the Mortgage Loan or used conferred discretion improperly. Carson responds that Defendants exercised discretion in how they applied payments when they were either more or less than the required amount, and that there are genuine issues of material fact as to whether Defendants "subverted" her "justified expectation" as to how her payments were to be applied. Defendants reply that the implied duty of good faith and fair dealing is not breached unless a party " 'uses discretion conferred by the contract to act dishonestly or outside the scope of commercial practices to deprive the other party of the benefit of the contract.' " (ECF No. 79, p. 6 (quoting ADT Sec. Servs., Inc. v. Premier Home Prot., Inc. , 181 P.3d 288, 293 (Colo. App. 2007) ).)[8] Here, Defendants contend, the parties specifically agreed Defendants could hold insufficient payments in suspense. The Court agrees.
Assuming the Mortgage Loan conferred Defendants discretion, Carson fails to argue - must less show there are genuine issues of material fact - that Defendants acted dishonestly or outside the scope of accepted commercial practices. Instead, Carson's argument hinges on her disagreement as to how her payments were applied (or not applied) as they were contrary to her expectations. But, "the duty of good faith cannot be used to contradict terms or conditions for which a party has bargained." ADT Sec. Servs., Inc. , 181 P.3d at 293 (citations omitted). "The doctrine does not obligate a party to accept a material change in the terms of the contract, or to assume obligations that vary or contradict the contract's express provisions, nor does it permit a party to inject substantive terms into the contract." ADT Sec. Servs., Inc. , 181 P.3d at 293 (citing Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc. , 872 P.2d 1359, 1363 (Colo. App. 1994) ). Here, Carson's alleged expectations would be contrary to what the parties specifically agreed - that Defendants may hold such payments and applied them as they did.[9] Accordingly, summary judgment in favor Defendants is granted on this claim.
D. The FDCPA
The parties agree the FDCPA only applies to "debt collectors." 15 U.S.C. § 1692d (prohibiting harassment, oppression, or abuse by "debt collectors"). The issue is whether either or both Defendants are "debt collectors" under the FDCPA. See 15 U.S.C. § 1692a(6).
Defendants argue HSBC is not a debt collector as it is the holder of the debt and not attempting to collect the debt of another. Carson did not address, much less dispute, this argument. Accordingly, summary judgment is granted to HSBC as to this claim. See Ladouceur v. Wells Fargo , 682 F. App'x 649, 652 (10th Cir. 2017) (debt collector does not include consumer's creditor; Wells Fargo was not debt collector where it originated and serviced the loans); Veres v. Wells Fargo Bank, N.A., No. 12-CV-03119-REB-KLM, 2014 WL 1133186, at *10 (D. Colo. Mar. 21, 2014) ("[T]he holder of the note (here, Defendant HSBC) is not a 'debt collector' within the meaning of the [FDCPA] because [the note holder] is not attempting to collect the debt of another." (internal quotation marks and citation omitted, brackets in original) ).
*1171 Defendants also argue Ocwen is not a debt collector because the term does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity...(iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). Thus, the term does not include mortgage loan servicers, if they acquire the servicing rights before the loan is in default. Obduskey v. Wells Fargo , 879 F.3d 1216, 1219 (10th Cir. 2018) ; see also Garrett v. BNC Mortg., Inc. , 929 F.Supp.2d 1120, 1126 (D. Colo. 2013) (collecting cases).
Here, the undisputed material facts show that Ocwen was the servicer; they also show it acquired the servicing rights to the Mortgage Loan before default. Specifically, Ocwen acquired servicing rights on November 1, 2006. Carson argues that she was not in default when such servicing rights were acquired. (See SUMF ¶ 37.) But, more importantly, Ocwen did not consider Carson to be in default until after November 1, 2006, when she allegedly failed to make her November or December 2006 payments. This is shown by Ocwen's written communications to Carson addressing such payments, and by when Carson began receiving calls from Ocwen - in January 2007. (ECF Nos. 79-2, 79-3; SUMF ¶¶ 38, 56.) On this record, Carson fails to meet her burden of establishing a triable issue of material fact.
Based on the foregoing, Defendants are entitled to judgment as a matter of law on this claim.
E. The FCRA
Under the FCRA, after receiving notice of a consumer dispute from a credit reporting agency ("CRA"), the furnisher of information must: " '(1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.' " See Llewellyn v. Allstate Home Loans, Inc. , 711 F.3d 1173, 1178-79 (10th Cir. 2013) (quoting Pinson v. Equifax Credit Info. Servs., Inc. , 316 F. App'x 744, 750 (10th Cir. 2009) ). A breach of such duties may expose the furnisher of information to liability. Sanders v. Mountain Amer. Fed. Credit Union , 689 F.3d 1138, 1147 (10th Cir. 2012).
Defendants assert Carson's FCRA claim cannot be sustained because she failed to plead any facts or offer any evidence challenging the reasonableness of Defendants' investigation or describing any conduct during Defendants' investigation that may be considered in a reasonableness analysis. Carson responds that she notified the CRAs of her dispute, and notwithstanding the CRAs' notification to Defendants of Carson's dispute, Defendants failed to report a bona fide dispute existed. Defendants counter with the contention that Carson's dispute cannot be bona fide because she defaulted on the Mortgage Loan.
Facially, Defendants' argument appears to have merit: Carson defaulted on the Mortgage Loan sometime after it was entered. The problem, however, is that the Court does not know what Defendants reported and, accordingly, whether the information was provided in "a manner as to create a materially misleading impression." Llewellyn , 711 F.3d at 1186. Further, Defendants apparently rely on what occurred after the Loan Modification in 2011, but, as discussed above, there is a material factual dispute as to when default occurred. Accordingly, *1172 on this record, Defendants are not entitled to summary judgment.
F. Unjust Enrichment
To establish an unjust enrichment claim, the claimant " 'must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.' " Pulte Home Corp. v. Countryside Cmty. Ass'n, Inc. , 382 P.3d 821, 833 (Colo. 2016) (quoting Lewis v. Lewis , 189 P.3d 1134, 1141 (Colo. 2008) ). However, where there is an express contract addressing the subject of the alleged obligation to pay, there is generally no recovery for unjust enrichment. Id. ; see also Jorgensen v. Colo. Rural Prop., LLC , 226 P.3d 1255, 1259 (Colo. App. 2010).
Defendants contend Carson's claim fails because the Note and Deed of Trust are express contracts which address Carson's obligation to pay and Defendants' rights to assess charges and fees. Carson asserts her unjust enrichment claim covers conduct outside the express contracts; therefore, it falls within the exception to the "express contract" rule. Pulte Home Corp. , 382 P.3d at 833. The Court finds otherwise.
Here, the alleged conduct raised by Carson are Defendants' use of suspense accounts and the assessment of charges. The undisputed facts, however, show the Deed of Trust directly addresses Defendants' use of suspense accounts and the assessment of charges. (ECF No. 66-2, pp. 5, 11 ; SUMF ¶¶ 7, 50.) Thus, the exception does not apply. Accordingly, Carson's claim for unjust enrichment fails.
IV. CONCLUSION
Based on the foregoing, it is ORDERED that Defendants' Revised Motion for Summary Judgment (ECF No. 66 ) is granted in part and denied in part as follows:
(1) Defendants' motion is DENIED as to Plaintiff's Third Claim - Breach of Contract and Seventh Claim - Violation of the Fair Credit Reporting Act; and
(2) Defendants' motion is GRANTED as to the remaining three claims: Fourth Claim - Breach of Duty of Good Faith and Fair Dealing; Eighth Claim - Fair Debt Collection Practices Act; and Ninth Claim - Unjust Enrichment.

Carson alleged People's Choice assigned the Mortgage Loan to HSBC in February 2011. (ECF No. 24, ¶ 30; No. 24-4.)

Carson's Response argues she never received an Annual Escrow Account Disclosure Statement for the period after the Modification Agreement, but the record shows otherwise. Here, Defendants provided a copy of the September 9, 2011 Escrow Statement which Carson produced to Ocwen. (ECF No. 79-6.) Carson's copy has the bottom part of the first page redacted, but that does not negate the fact that she received this Escrow Statement. And, Carson's conclusory statements such as "she did not receive many of the Annual Escrow Disclosures from Ocwen" (SUMF ¶ 15, italics in original) are insufficient to create a material factual dispute that she received this one, i.e., the September 9, 2011 Escrow Statement.

Defendants' Exhibit Q contains a letter to Carson, with attachment, but it is unclear whether there were other requests and other responses.

Carson filed in state court, but Defendants removed the case to this court.

Section 13-80-101(1)(a) provides for a three-year statute of limitations for "all contract actions, including personal contracts and actions under the 'Uniform Commercial Code', except as otherwise provided in section 13-80-103.5."

On the current record, the effect of the July 2011 Modification Agreement as to any prior events is unclear.

If Defendants do make such an argument, the Court rejects it as unsupported by the Mortgage Loan.

ADT actually states: "when a party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." 181 P.3d at 293.

Carson does not argue Defendants' actions were contrary to the terms; instead, she argues they were contrary to what she expected.